**WALL, Appellant,**

v.

**OHIO PERMANENTE MEDICAL GROUP, INC. et al., Appellees.**

[Cite as *Wall v. Ohio Permanente Med. Group, Inc.* (1997), 119 Ohio App.3d 654.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69841.

Decided June 16, 1997.

656

Paige A. Martin Co., L.P.A., and Paige A. Martin, for appellant.

*Reminger & Reminger Co., L.P.A., Christine S. Reid* and *Brian D. Sullivan; Ulmer & Berne* and *Kenneth A. Bravo; Benesch, Friedlander, Coplan & Aronoff* and *Mark A. Phillips,* for appellees.

---

KARPINSKI, Judge.

This appeal arises from an action by a physician against a professional corporation, other physicians, and a hospital following the termination of his employment by the professional corporation and loss of hospital staff medical privileges. The professional corporation contracted with a health maintenance organization ("HMO") to provide services at the hospital.

Plaintiff-appellant Mark H. Wall, M.D., commenced this action against his former practice group, Ohio Permanente Medical Group, Inc. ("OPMG"), four medical doctors affiliated with OPMG, Ronald Potts, Roland Philip, Mark Feingold, and Ronald Copeland (collectively with OPMG, the "OPMG Defendants"); Metrohealth Saint Luke's Medical Center ("St. Luke's"), and the chief of surgery at St. Luke's, Helmut Schreiber, M.D., F.A.C.S. (collectively with St. Luke's, the "St. Luke's Defendants"). Wall's complaint alleged generally that the OPMG Defendants and St. Luke's Defendants abused the medical peer review process by improperly attributing to him surgical complications and by ordering prospective review of all his surgical procedures, for the purposes of terminating his employment and hospital medical staff privileges and preventing him from practicing medicine elsewhere.

Wall was hired by OPMG in March 1989 as a thoracic surgeon to provide services to members of the Kaiser–Permanente Medical Care Program of Ohio ("Kaiser–Permanente"). OPMG is a professional corporation that provides services under contract to the Kaiser Foundation Health Plan, a nonprofit HMO. The parties' agreement, drafted on letterhead bearing the names of both OPMG and Kaiser-Permanente, contained the following provision:

"At any time following the date hereof, it is mutually understood and agreed that either you or the Medical Group [OPMG] may terminate your employment hereunder by providing ninety (90) days prior written [notice] of such termination."

Wall commenced his employment with OPMG on July 1, 1989, and was granted staff medical privileges at St. Luke's by virtue of his relationship with OPMG thereafter on July 12, 1989.

The parties' relationship did not proceed smoothly. Approximately one year thereafter Wall was transferred at his request from a location on the east side of Cleveland to a location on the west side. Several performance evaluations of Wall, including medical peer review proceedings, were conducted by OPMG and

at St. Luke's during the course of his employment. Wall particularly complains about a July 1990 evaluation by Philip, his OPMG supervisor, and a Report on Physician # 5934, listing surgical "complications" compiled by Schreiber from St. Luke's morbidity and mortality logs and quality assurance screens.

Wall's employment was ultimately terminated by OPMG effective December 5, 1990, pursuant to the ninety-day-notice provision, after approximately eighteen months' duration.[1] Wall was not referred any patients during the final ninety-day period. On January 14, 1991, St. Luke's notified Wall that it placed him on a one-hundred-percent prospective review of all proposed surgical procedures. Wall's medical malpractice insurance and staff medical privileges at St. Luke's lapsed. He ultimately sought but was denied staff medical privileges at other local hospitals, including Meridia Huron hospital and Parma Community General Hospital. Parma Community General reported its denial of staff medical privileges to the National Practitioner Data Bank.

Wall's complaint specifically claimed that he was wrongfully discharged from his employment at OPMG in violation of public policy, that defendants conspired to tortiously interfere with his ability to practice medicine, that defendants defamed him, and that St. Luke's denied him due process in connection with his staff medical privileges. The crux of Wall's claims is that defendants abused the peer review process by falsely attributing high surgical complications rates to him and by overstating his medical malpractice risk. The OPMG Defendants and St. Luke's Defendants filed separate answers denying the substantive allegations against them.

During the course of the litigation, Wall sought extensive discovery concerning medical performance appraisals for him and other physicians. Wall filed written interrogatory and document requests to obtain information from the defendants concerning complication rates and productivity statistics, morbidity and mortality conference reports, letters of inquiry from the surgical case review committee, quality assurance and surgical indication screens, operating room log sheets, patient records, and various documents and reports containing such information. Wall also sought similar information during depositions, including information concerning medical malpractice claims filed against Philip, his former OPMG supervisor. Much of this material, including OPMG physician productivity

---

1. Wall spoke with OPMG president Potts on November 26, 1990, during which time, Potts stated, Wall tendered his resignation. The record shows that Wall contacted the employment service that placed him with OPMG the same day. OPMG accepted Wall's resignation by letter effective December 5, 1990. Wall's own personal attorney subsequently referred to Wall's "resignation" in a letter to OPMG. Wall maintains, however, that he was fired and did not resign.

statistics and information concerning Wall's surgical patients at St. Luke's, was produced during discovery.

The OPMG Defendants and St. Luke's Defendants opposed Wall's remaining discovery requests in part on the grounds that the information sought was privileged medical peer review material. The trial court initially denied Wall's motions to compel discovery, and, upon reconsideration, conducted an *in camera* review of the material requested and again denied the motions to compel in two separate three-page typewritten entries.[2]

The OPMG Defendants and St. Luke's Defendants also filed respective motions for summary judgment on the claims against them arising out of their alleged abuse of the medical peer review process. The OPMG Defendants argued that Wall failed to present a prima facie case to support his claims. The St. Luke's Defendants argued that they were protected by statutory immunity from civil liability for peer review activity and that Wall failed to produce evidence to support his claims. Wall opposed both motions for summary judgment. The trial court granted the motions for summary judgment in an order journalized October 19, 1995. Wall timely appeals, raising five assignments of error.

## I

Wall's first and second assignments of error challenge the trial court's discovery rulings as follows:

"The trial court committed prejudicial error in denying appellant's motion to compel the St. Luke's Defendants to provide discovery after appellant demonstrated sufficient malice to defeat the defense of qualified privilege.

"The trial court committed prejudicial error in denying appellant's motion to compel discovery from [*sic*] Ohio Permanente Medical Group Inc., appellees, since the information requested is not shielded by privilege and would prove that appellees acted arbitrarily and maliciously in evaluating Dr. Wall's competence."

These assignments of error lack merit.

Wall generally argues that the trial court improperly denied his motions to compel discovery of a wide range of information concerning the quality and quantity of services he and other OPMG physicians performed for Kaiser at St. Luke's. Wall specifically contends that certain information sought from the St. Luke's Defendants was not protected by the peer review privilege because it arose outside the peer review process and further that the statutory privilege does not prevent discovery either of names of peer review committee members or

---

2. Wall's prior appeal following the trial court's discovery rulings was dismissed by this court in case No. 68631 on March 10, 1995, for lack of a final appealable order.

of morbidity and mortality conference information. Wall also argues that the peer review activity conducted by the OPMG Defendants was not privileged because professional corporations performing services for HMOs were not specifically covered by the peer review confidentiality statute. Finally, he argues that even if the material is privileged, defendants waived the privilege by providing Dr. Wall with the Report on Physician # 5934 concerning patient "complications" attributed to him, speaking about the matter outside the formal peer review process, or acting with actual malice to defeat any privilege.[3]

■ It is well established that claims of error concerning trial court discovery rulings are governed by the abuse-of-discretion standard of review. *Henneman v. Toledo* (1988), 35 Ohio St.3d 241, 243–246, 520 N.E.2d 207, 209–212; *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 85–86, 523 N.E.2d 902, 909–911. We have reviewed the record and independently examined the documents submitted to the trial court for its *in camera* review. Under the circumstances, the trial court did not abuse its discretion or commit any error by finding that the records were privileged and, along with testimony, not discoverable or admissible into evidence in this case.

### Scope of Privilege

■ Wall has failed to show that the trial court abused its discretion by recognizing the privilege claims of St. Luke's and its chief of surgery Dr. Schreiber. R.C. 2305.251 specifically provides in part as follows:

"Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence * * * against a health care professional [or] institution arising out of matters which are the subject of evaluation and review by such committee."

R.C. 2305.25(A) specifically covers utilization review and quality assurance committees of a hospital and the members and employees of such committees. *Young v. Gersten* (1978), 56 Ohio Misc. 1, 10 O.O.3d 66, 381 N.E.2d 353. Therefore, as noted by the trial court, these materials are nondiscoverable under R.C. 2305.251.

---

3. Wall complains further that St. Luke's did not provide information concerning its insurance coverage. St. Luke's responded that it has a "rather significant self-insured retention" and would make further disclosure "if the subject of excess or umbrella policies becomes pertinent." Although we do not condone withholding of discoverable information under Civ.R. 26(B)(2), we agree with the trial court that Wall failed to show that this information was relevant to any issue. Moreover, any error was harmless under the circumstances because of our disposition of Wall's assignments of error.

■ In his argument to the contrary, Wall places great reliance on a prior opinion of this court, which held that a trial court did not abuse its discretion by ordering disclosure of hospital morbidity and mortality conference reports. *Winters v. Lutheran Med. Ctr.* (1989), 43 Ohio App.3d 119, 539 N.E.2d 715. However, the case at bar is distinguishable from *Winters* because of the uncontradicted testimony of Dr. Schreiber that the morbidity, mortality, and other conferences for which Wall seeks records in this case are part of the St. Luke's hospital peer review process. Unlike the reports in *Winters*, the materials in this case address the care or treatment rendered to the particular patients and by themselves constitute confidential peer review materials. In addition, the materials were provided to the St. Luke's quality assurance department. As a result, the trial court did not abuse its discretion by refusing to compel the disclosure of these materials.

■ Wall also contends that the trial court abused its discretion by finding that the names of members of St. Luke's peer review committees were not discoverable in this case. Wall's motion to compel nakedly alleged abuse of the peer review process in an effort to overcome St. Luke's claim of privilege, but the motion was not supported by an affidavit or other evidence to support the claim.[4] Under the circumstances, Wall failed to show that the identity of peer review committee members was nonprivileged and relevant to any claim in the litigation or that such peer review committee members had knowledge of any discoverable matter to warrant discovery under Civ.R. 26(B)(1).

Wall's reliance on *Newton v. Grandview Hosp.* (Mar. 22, 1993), Montgomery App. No. 13510, unreported, 1993 WL 81800, to support this argument is misplaced. The *Newton* court did not address whether the names of hospital credentialing committee members were required to be disclosed because the hospital had already disclosed the information in that case. In contrast, the case at bar involves a hospital peer review committee, St. Luke's did not agree to disclose the information, and Wall did not show that the names of committee members were relevant to any issue. Wall cannot compel testimony from any peer review member absent evidence of actual malice to defeat the privilege.[5]

Wall's arguments concerning the peer review privilege for the OPMG Defendants likewise lack merit. Wall concedes that with one exception the information

---

4. In the context of discovery of the identity of confidential informants in criminal cases, courts routinely hold that such bald assertions are insufficient to establish the necessity for disclosure, even when no similar statutory privilege exists. *E.g., State v. Williams* (Jan. 24, 1994), Cuyahoga App. No. 64175, unreported, 1994 WL 18157.

5. Wall offered no evidence of such actual malice to warrant discovery, and we agree with the trial court that the *in camera* materials do not support the claim.

sought from the OPMG Defendants constitutes peer review material, but contends that the trial court should have compelled discovery because the committee that conducted peer review was not covered by the confidentiality statute.[6] However, R.C. 2305.25(F), as amended, extends the nondiscovery and inadmissibility of peer review materials granted by R.C. 2305.251 to the following organizations:

"(F) *A peer review committee of a health maintenance organization* that has at least a two-thirds majority of member physicians in active practice and that conducts professional credentialing and quality review activities involving the competence or professional conduct of health care providers, which conduct adversely affects, or could adversely affect, the health or welfare of any patient. For purposes of this division, 'health maintenance organization' includes wholly-owned subsidiaries of a health maintenance organization." (Emphasis added.)

■ Wall argues that OPMG is not an HMO under this provision. OPMG responds that this court should extend the protection of R.C. 2305.25 to peer review committees of professional physician corporations. We decline to adopt the argument of either party in this case, however, because OPMG literally fits within the terms of R.C. 2305.25(F) as a peer review committee "of" an HMO.

There are three basic types of HMOs: the staff model, the group model, and the independent practice association ("IPA") model. Binford & Feldman, The Law of Medical Practice in Ohio (3 Ed.1996), Section 2:8, at 158–159. The staff model HMO directly employs physicians, the group model HMO contracts with physicians' groups that employ physicians, and the IPA model HMO contracts with individual physicians to perform services. *Id.* OPMG is a professional corporation which, consistent with the group model, provides services under contract to the Kaiser Foundation Health Plan, a nonprofit HMO.[7] Contrary to

---

**6.** Wall also sought to compel testimony from Philip and Feingold concerning medical malpractice lawsuits filed against Philip. However, Wall did not show how the requested information was relevant to any claim or defense in the litigation, reasonably calculated to lead to the discovery of admissible evidence, and not unduly burdensome.

Wall simply contended that information concerning malpractice actions filed against Philip was relevant to the "credibility" of Philip's evaluation of Wall. However, to establish his claims, Wall was required to show that Philip knew or recklessly disregarded that his evaluation of Wall was false.

The existence of medical negligence claims against Philip has no tendency to establish either of these elements. Wall was not denied an opportunity to conduct any relevant discovery. See *Ball v. Hilton Hotels* (1972), 32 Ohio App.2d 293, 61 O.O.2d 353, 290 N.E.2d 859. Under the circumstances, Wall has failed to show the trial court's discovery ruling was an abuse of discretion adversely affecting his substantial rights to constitute reversible error. *Stegawski v. Cleveland Anesthesia Group, Inc., supra,* 37 Ohio App.3d at 86, 523 N.E.2d at 910–911.

**7.** Federal law specifically requires those who contract to provide professional services to HMOs to maintain peer review committees. Section 300, Title 42, U.S.Code. It appears that

Wall's argument, the fact that the HMO contracted with OPMG to perform the services in this case, rather than directly employing physicians under the staff model, does not prevent the OPMG from serving as a peer review committee "of" the HMO.

In support of his argument to the contrary, Wall relies on two appellate opinions that arose prior to the amendments to R.C. 2305.25, the statute at issue in this case. *Lomano v. Cigna Healthplan of Columbus, Inc.* (1990), 64 Ohio App.3d 824, 582 N.E.2d 1150, and the later appeal in *Lomano v. Cigna Healthplan of Columbus, Inc.* (1992), 83 Ohio App.3d 40, 613 N.E.2d 1075. These cases recognized that no privilege for peer review conducted by a for-profit HMO existed prior to the R.C. 2305.25(F) amendment set forth above and that the amendment could not be applied retroactively.

However, as noted by the trial court, the *Lomano* cases are distinguishable. First, R.C. 2305.25(F), as amended, may be applied prospectively to cases such as this filed after its effective date. Compare *Lomano v. Cigna Healthplan of Columbus, Inc.*, 83 Ohio App.3d at 43, 613 N.E.2d at 1077, fn. 2.; see, also, *Denicola v. Providence Hosp.* (1979), 57 Ohio St.2d 115, 11 O.O.3d 290, 387 N.E.2d 231; *Samuelson v. Susen* (C.A.3, 1978), 576 F.2d 546. The R.C. 2305.25(F) amendment specifically extends the privilege to "a peer review committee of a health maintenance organization," the OPMG Defendants fall within this literal definition, and it would frustrate the legislative purpose to exclude OPMG from operation of this provision. Finally, although it is no longer relevant under the amended statute, the HMO in this case is a nonprofit foundation unlike the for-profit HMO corporation in the *Lomano* cases.[8]

Because we find that the peer review privilege applies to the peer review conducted by both the St. Luke's Defendants and OPMG Defendants, we turn to Wall's arguments that defendants waived, or acted with actual malice, to defeat the privilege.

---

the physicians employed by OPMG devoted most if not all their time to providing services for the HMO.

8. Some courts have held that peer review materials are protected by a common-law privilege. *E.g., Bredice v. Doctors Hosp., Inc.* (D.D.C.1970), 50 F.R.D. 249, affirmed (C.A.D.C.1973), 479 F.2d 920. Other courts have applied privilege statutes to situations not covered by statute based on the public policy announced by the statute. *E.g., Dade Cty. Med. Assn. v. Hlis* (Fla.App.1979), 372 So.2d 117. Under either view, even if these statutes denying production of the requested materials did not apply by their own terms to OPMG peer review activities, Wall made no showing of necessity or extraordinary circumstances to overcome the strong public interest of confidentiality in this context to warrant discovery. See *Henneman v. Toledo, supra.*

Waiver

Wall contends that the St. Luke's Defendants and OPMG Defendants waived the peer review privilege by providing the Report on Physician # 5934 to Wall during discovery and/or by talking about the matter outside peer review committee meetings. However, Ohio courts have recognized that such a broad concept of waiver would negate the purpose of the peer review confidentiality statute. *Atkins v. Walker* (1981), 3 Ohio App.3d 427, 3 OBR 506, 445 N.E.2d 1132.

■ Wall's principal claim of waiver stems from the disclosure of the Report on Physician # 5934. This report was compiled by Schreiber from St. Luke's morbidity and mortality conference information and nursing screens. The document apparently concerns Dr. Wall, although it does not refer to him by name. The introductory paragraph provides as follows:

"The following list of complications occurred in the postoperative period on patients who were operated upon by physician # 5934. The source of this information is derived from the surgical indications monitoring report dating back to early 1989 as well as from the Morbidity/Mortality logs of the Department of Surgery. They are not totally inclusive and may involve complications which occurred while patients were treated by other physicians or residents."

The report thereafter refers to thirty patients, likewise identified by number only, and briefly describes the surgical "complication" or adverse event each patient allegedly encountered during the course of treatment.

The *Atkins* court specifically rejected the argument that a similarly written document provided to a physician concerning the matters considered by peer review committees waived any privilege. *Id.,* 3 Ohio App.3d at 430, 3 OBR at 508–509, 445 N.E.2d at 1135–1136. Wall has offered no persuasive reason to depart from *Atkins* under the facts of this case. As a result, the trial court was not required to compel Schreiber to answer Wall's questions relating to the document.

■ Wall's remaining claim of waiver arises, he argues, from oral communication among defendants. Wall's argument is based on the claim that St. Luke's chief of surgery, Schreiber, spoke with Philip, OPMG's liaison with St. Luke's hospital and his supervisor at OPMG, concerning Wall's surgical complication rates. Without any details concerning the exact nature or timing of any such communication(s), however, there was no basis to infer that anyone expressly waived a known legal right to confidentiality. As a result, the trial court did not abuse its discretion by finding that no waiver arose from any statements that may have been made between these persons outside the formal peer review process.

## Actual Malice

Finally, Wall has failed to show that any of the St. Luke's Defendants or OPMG Defendants acted with actual malice. To overcome the qualified privilege for peer review materials under R.C. 2305.251, the party seeking relief must present clear and convincing evidence that defendants acted with actual malice. *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609. Actual malice in this context requires proof that defendants made statements in connection with the peer review process with knowledge they were false or with reckless disregard for whether they were true or false.[9] *Id.,* 60 Ohio St.3d at 114–115, 573 N.E.2d at 612–614.

The mere inaccuracies in statements and alleged improper motivations by speakers are insufficient to show actual malice. Rather, the party seeking relief must present evidence that defendants knew the statements were false, entertained serious doubts about whether they were false, or disregarded a high probability that they were false. Not one of these alternatives has been shown. When construed in the light most favorable to Wall, the evidence is insufficient to show that any of the St. Luke's Defendants or OPMG Defendants acted with actual malice to defeat the statutory peer review privilege in this case.

Wall complains that defendants' evaluations of him were both false and "subjective." Wall's claims concerning the St. Luke's Defendants relate to the list of complications compiled in the Report on Physician # 5934. Wall contends that the report included too many complications which should not have been attributed to him and that the existence of these inaccuracies establishes that the report was made with actual malice.

This argument fails for two reasons. First, the report contemplated precisely this contingency. As noted above, the introductory paragraph to the report contained the following disclaimer:

"They are not totally inclusive and may involve complications which occurred while patients were treated by other physicians or residents."

Wall's arguments concerning the report prove merely that this statement is true. This provision negates Wall's argument of actual malice. Wall's lawyerly contention that the inclusion of this disclaimer in the report provides evidence that defendants knew the list was false is, by itself, unpersuasive, for Wall has not produced any evidence that the St. Luke's Defendants knew any item on the list was false.

---

9. Most of the challenged statements made in this case constituted professional opinions not capable of being proven either true or false. Such opinions are constitutionally protected. *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 281, 649 N.E.2d 182, 185.

Wall's reliance on *Stresen–Reuter v. Hull* (Aug. 3, 1990), Sandusky App. No. S–89–27, unreported, 1990 WL 109877, in support of his argument to the contrary is misplaced for precisely this reason. The *Hull* court found that a defamation plaintiff produced evidence of actual malice to defeat summary judgment because the physician who made the challenged statements *admitted* he knew one of the statements was false before publishing it. *Id.* at 11. The record in this case contains no such admission or evidence.

■ Concerning the OPMG Defendants, Wall's claims of actual malice generally relate to an evaluation by Philip six months prior to the termination of Wall's employment. Most of the specific comments concerning Wall were in the middle range on a one-to-five-point scale. Wall complains that the evaluation was "subjective," understated his productivity, and overstated his complication rates and malpractice liability risk. However, even if these arguments were valid, they fall short of demonstrating that Philip knew or recklessly disregarded whether any of his comments in the evaluation were factually false.

At most, Wall showed that Philip's evaluation was based on an incomplete report of surgeries performed by Wall, but there was no evidence that Philip knew or recklessly disregarded whether the information was incomplete. It should be noted that every evaluation contains some subjective aspects, and this is particularly true in this case because Wall was the only vascular thoracic surgeon employed by OPMG. Neither the evidence submitted by Wall nor the materials reviewed *in camera* by the trial court provides any evidence that any defendant undertook peer review or made any statement concerning Wall with actual malice.

Accordingly, Wall's first and second assignments of error are overruled.

## II

Wall's third, fourth and fifth assignments of error challenge the trial court's order granting summary judgment against him:

"The trial court erred in granting summary judgment for St. Luke's Hospital, since there is a genuine issue of material fact as to whether or not St. Luke's Hospital acting through Dr. Schreiber and Dr. Smith acted with malice when the 100% review was imposed on Dr. Wall's privileges.

"The trial court erred in granting summary judgment for the defendants-appellees, Ohio Permanente Medical Group Inc., and its individual doctors, since all acted wrongfully in discharging Dr. Wall and blackballing him from his profession in violation of public policy.

"The general release signed as part of the application for privileges at Parma does not release OPMG or the individual defendants from liability for their torts of defamation and tortious interference with contract."

These assignments lack merit.

Wall contends that the trial court improperly entered summary judgment against him. Specifically, he argues that the St. Luke's Defendants maliciously imposed, without affording any hearing, an indefinite one-hundred-percent prospective review of proposed surgical procedures he was to conduct, interfered with his business relationships, and defamed him. Wall similarly argues that the OPMG Defendants interfered with his business relationships, defamed him, and wrongfully discharged him in violation of public policy.

## St. Luke's Defendants

■ Wall's due process arguments concerning his staff medical privileges lack merit for procedural and substantive reasons. First, judicial review of adverse actions by a hospital concerning physician staff medical privileges is limited. One limitation is that administrative remedies be exhausted prior to seeking review in court. Wall's complaint, however, did not allege that he exhausted his administrative remedies at St. Luke's Hospital prior to seeking judicial review. As a result, his complaint failed to state a claim for improperly excluding him from the St. Luke's medical staff. *Quamme v. Lancaster–Fairfield Community Hosp.* (Feb. 27, 1995), Fairfield App. No. 94–CA–33, unreported, 1995 WL 156276, citing *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 564 N.E.2d 477, syllabus.

Wall's basic claim is that he was required to undergo a prospective review of all surgical procedures.[10] Although his allegations are not clear, Wall apparently claims that the requirement for prospective review was based on something other than medical considerations. However, as noted above, the St. Luke's Defendants are immune from claims arising out of their peer review activity under R.C. 2305.25 because Wall did not prove by clear and convincing evidence that they acted with actual malice. *Jacobs v. Frank, supra.* Contrary to Wall's claims, the record shows that the actions of the St. Luke's Defendants were in good faith, supported by substantial evidence, and in accordance with fair procedures.

---

10. It appears that Wall's relationship to the medical staff subsequently terminated because Wall did not have medical malpractice insurance. Hospitals may require such insurance as a condition for continued staff privileges. See Propriety of Hospital's Conditioning Physician's Staff Privileges on his Carrying Professional Liability or Malpractice Insurance (1981), 7 A.L.R.4th 1238.

■ Wall's claims against the St. Luke's Defendants for tortious interference with his employment at OPMG or his ability to perform physician services at other hospitals or elsewhere lacks merit. The record shows that Wall's employment at OPMG terminated on December 5, 1990. St. Luke's did not place him on the challenged prospective surgical review until more than one month later on January 14, 1991. As a result, the challenged action by St. Luke's did not interfere with his employment at OPMG in any way.

■ Wall's sole remaining contention is that St. Luke's "interfered" with his obtaining staff medical privileges at Meridia Huron Hospital by reporting that it had placed him on a one hundred percent prospective surgical review. However, reporting information concerning physicians to hospitals which request such information for purposes of evaluating applications for medical privileges is part of the peer review process. As noted above, the St. Luke's Defendants are immune under R.C. 2305.25 from claims arising out of their peer review activity, because Wall failed to prove that they acted with actual malice. *Jacobs v. Frank, supra.* In addition, Wall failed to support this claim because he produced no evidence that the St. Luke's Defendants intentionally, without privilege, interfered with his prospective relationship. *Krause v. Case W. Res. Univ.* (Dec. 19, 1996), Cuyahoga App. No. 70712, unreported, at 22–24, 1996 WL 732537; *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 662 N.E.2d 1088.

Finally, the trial court also properly granted summary judgment against Wall on his claim that Schreiber defamed him. Wall produced an affidavit of a retired physician friend who agreed with Wall to contact Schreiber in 1991 to elicit his views about Wall. The cursory affidavit states that Schreiber informed him that "Dr. Wall's work was not acceptable." This statement is capable of nondefamatory construction. Even if we construe this statement as defamatory, however, the record shows that Wall's claim was barred by the one-year statute of limitations set forth in R.C. 2305.11(A) because the statement was made more than a year prior to filing this action on September 8, 1993. *Krause v. Case W. Res. Univ., supra,* at 15–16.

## OPMG Defendants

The trial court likewise properly found that Wall failed to support his claims against the OPMG Defendants. The record shows that OPMG terminated Wall's employment pursuant to the ninety-day-notice provision of his written contract. Wall raised claims for wrongful discharge in violation of public policy, tortious interference, and defamation. However, neither his complaint nor any other evidence filed in this case substantiated how he was discharged in violation of a statute or clear public policy or that the OPMG Defendants committed any other tort.

 Wall originally cited R.C. 3701.251 as the basis for his wrongful discharge claim. This statute, however, provides no basis for the claim. R.C. 3701.251 requires that a hospital not discriminate against various specified types of professionals when it grants staff privileges. However, the OPMG Defendants are not hospitals, and this case does not allege improper discrimination of any kind. Moreover, physicians have not traditionally been employed by hospitals and the statute does not provide physicians as a class with any employment protection. During the course of the litigation, Wall abandoned this argument and now bases his wrongful discharge claim on the Due Process Clause in the Ohio Constitution and on an alleged public policy against "abusing the peer review process."

 The Section 16, Article I due process provision of the Ohio Constitution does not directly apply to private nongovernmental employers such as OPMG. Wall's attempt to invoke this provision in this context would completely eliminate at-will employment and is particularly unpersuasive in this case for two reasons. First, Wall entered into a written employment contract with OPMG that provided either party the right to terminate their relationship upon specified notice. Neither party to the contract included a due process provision. More important, however, the record shows that Wall was provided, and exercised, an opportunity to be heard by OPMG throughout the course of his employment.

The Ohio peer review statutes are not the type of statutes which have typically been invoked to support a claim for wrongful discharge in violation of public policy. Under these statutes, certain medical organizations and professionals are required to conduct peer review and are granted immunity for claims arising out of this activity because of the underlying public policy favoring medical care quality assurance. Wall seeks to transform these provisions, which by their own terms limit liability, into precisely the opposite—to expand liability.

Even if we construed Wall's complaint to state a viable claim for wrongful discharge through an abuse of the peer review process, Wall has failed to establish this claim, however, because he has not produced any evidence that the OPMG Defendants abused the process by acting with actual malice. As noted above, there is absolutely no evidence that any of the defendants either knew their statements were false or recklessly disregarded whether they were true or false.

The trial court likewise properly granted summary judgment against Wall on his remaining claims against the OPMG Defendants for defamation. Wall concedes that the written evaluations by Feingold and Philip pursuant to the request of Parma Community General Hospital have no defamatory content, and his remaining claim arises from two oral statements. For the reasons set forth above, the affidavit submitted by Wall to support his claim against Philip reveals

that this claim, like the identical claim against Schreiber, is barred by the one-year statute of limitations because the statement allegedly made to Wall's retired physician friend was made more than one year prior to the complaint in this case.

■ Wall's final argument is based on a comment from a physician at the Parma Community General Hospital who stated that Wall's request for medical privileges was denied in part because of statements made by "Kaiser." However, as Wall argued in Section I above, none of the OPMG Defendants is "Kaiser." Wall has never identified who allegedly defamed him or what the unidentified person stated. Without identifying who made the allegedly defamatory statement, Wall has failed to support his claim. *Rinehart v. Maiorano* (1991), 76 Ohio App.3d 413, 421, 602 N.E.2d 340, 346. Finally, Wall did not prove that the statement was a false statement of fact as opposed to a constitutionally protected opinion. *Vail v. Plain Dealer Publishing Co., supra.*[11]

■ Wall's fifth and final assignment of error relates to a written release of claims. We note, however, that even if Wall produced evidence to support his claims for tortious interference and defamation, as he contends, his claims are barred by the release. Seeking medical privileges from Parma Community General Hospital, Wall executed a broad release, notarized on February 4, 1991, which provides in pertinent part as follows:

"KNOW ALL MEN BY THESE PRESENTS, that MARK H. WALL, M.D. F.A.C.S. of Beachwood, Ohio 44122, hereinafter referred to as the releasor * * * does hereby * * * release and forever discharge * * * all persons providing references * * * from any and all manner of claims, demands, damages, causes of action or suits that the releasor might now have or that might subsequently accrue to him by reason of any manner or thing whatsoever, particularly growing out of or in any way connected with, directly, or indirectly, providing information concerning the releasor's competency, ethics, character, mental or emotional stability, or other qualifications for Medical Staff appointment and desired privileges, including otherwise privileged and confidential information * * *."

Wall contends that this release does not bar his tortious interference and defamation claims. However, the court in *Pinger v. Behavioral Science Ctr., Inc.* (1988), 52 Ohio App.3d 17, 556 N.E.2d 209, rejected precisely this argument. The *Pinger* court affirmed summary judgment for the defendant on defamation and

---

11. Wall's assignments of error do not specifically challenge the award of summary judgment on his interference with contract claim against the OPMG Defendants. We note, however, that these claims fail for precisely the same reason the claim failed against the St. Luke's Defendants. Wall did not produce any evidence that the OPMG Defendants intentionally, without privilege, interfered with any contract or relationship. *Krause v. Case W. Res. Univ., supra; Hoyt, Inc. v. Gordon & Assoc., Inc., supra.*

intentional interference with contract claims when the plaintiff failed to controvert a valid agreement relieving the defendant of liability for administering psychological tests. Wall has offered no persuasive reason to reach a different result in this case.

Accordingly, Wall's third, fourth and fifth assignments of error are overruled.

*Judgment affirmed.*

NAHRA, J., concurs.

JAMES D. SWEENEY, P.J., concurs in judgment only.