JOURNAL ENTRY and OPINION
Appellee-Cross Appellant Tri-County Concrete Company (Tri-County) appeals the trial court's decision granting appellant-cross appellee Lisa Uffman-Kirsch's (Uffman-Kirsch) motion for summary judgment on its complaint alleging libel and tortious interference with the constitutional right to petition government for redress of grievances. Tri-County assigns the following two errors for our review:
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT OF TRI-COUNTY'S CLAIMS BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO COUNT I, DEFAMATION OF TRI-COUNTY BY LISA UFFMAN-KIRSCH'S PUBLICATION OF FALSE STATEMENTS.
 II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT OF TRI-COUNTY'S CLAIMS BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO COUNT II, DEFENDANT-APPELLANT'S MALICIOUS INTERFERENCE WITH PLAINTIFF-APPELLEE'S CONSTITUTIONAL RIGHT TO PETITION GOVERNMENT FOR A RIGHT OF REDRESS, OF PLAINTIFF-APPELLEE'S COMPLAINT.
Appellant-Cross Appellee Lisa Uffman-Kirsch appeals the trial court's judgment granting Tri-County summary judgment on her counterclaim of abuse of process and violation of her First Amendment right to free speech. She assigns the following error for our review:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT-APPELLANT'S CROSS MOTION FOR SUMMARY JUDGMENT ON HER COUNTER CLAIM.
Having reviewed the record and the legal arguments of the parties, we find no genuine issues of material fact exist as to any claim by any of the parties. Accordingly, we affirm the judgment of the trial court on denying Tri-County relief on its complaint and Lisa Uffman relief on her counterclaim. The apposite facts follow.
In 1994, Lisa Uffman-Kirsch, together with other residents of the city of North Royalton, formed the North Royalton Residents Involvement Committee (NRRIC). NRRIC formed to support an initiative to establish a rural residential zoning district in North Royalton.
Tri-County Concrete Company operated a concrete plant in Twinsburg, Ohio. Tri-County decided to expand its operation and acquired property in North Royalton for this purpose. On April 10, 1996, Tri-County received a use variance from the city of North Royalton to construct a batch plant and concrete recycling plant on its North Royalton property. Tri-County's use variance was subject to eighteen conditions or restrictions. The use variance specifically stated, [f]ailure to comply with any of the restrictions hereinafter enumerated shall be considered grounds for revocation of the use variance. Additionally, the use variance indicated authority to determine what constituted a violation belonged to the city's Building Commissioner, Carl Gawelek.
On July 1, 1996, Carl Gawelek, together with City Engineer Charles Althoff, sent a written memorandum to the city's law director informing him of Tri-County's failure to comply with several conditions of its use variance. Gawelek and Althoff generated the memorandum following Althoff's inspection of the Tri-County site. The memorandum notified the law director that a stop work order would be issued on the Tri-County site effective July 2, 1996, and requested advice on stopping the Tri-County operation pending review by the Planning Commission.
On July 2, 1996, the city posted stop work orders on the Tri-County site. Despite the stop work order, Tri-County attempted to continue its operations on July 3, 1996.
On July 5, 1996, the law director sent a letter to the mayor of North Royalton recommending the mayor refer the matter of Tri-County's use variance to the Board of Zoning Appeals (BZA) for the purpose of reconsideration. The law director expressed concern regarding Tri-County's violations of several conditions of its use variance, Tri-County's apparent failure to meet EPA requirements, and Tri-County's disregard of the stop work order issued by the city. The law director attached a list of eight violations, reported by Gawelek and Althoff, to his letter.
In addition to failing to comply with the stop work order, the listed violations included failure to comply with erosion control practice, stockpiling concrete slabs without permit and/or permission, and allowing the dumping of broken asphalt. In his letter, the law director also recommended holding a public hearing on the issue with public notice to area residents to allow Tri-County a forum to fully address all violations and allow the Board of Zoning Appeals to decide whether the violations warrant revocation or continued validity of the use variance.
On July 9, 1996, the city issued Tri-County an order to correct violations. The city gave Tri-County fifteen days to comply with the order.
On July 22, 1996, Uffman-Kirsch sent a letter to the Planning Commission expressing her concerns regarding Tri-County's use variance. In paragraph seven of her letter Uffman-Kirsch stated:
 Last, but perhaps most importantly, I feel we must consider long and hard the risks involved in approving any applications and/or plans for an organization that has a record of total disregard to the laws, restrictions, standards and requirements of the municipality in which it operates. Tri-County's performance history with the city of Twinsburg should serve as clear forewarning of this company's lack of community responsibility. In short, any organization that operates in complete defiance of a City's requirements while it is trying to gain approval should cause us to give serious thought to their probable performance after approval is given. (Emphasis in original.)
Uffman-Kirsch provided a copy of her letter to City Engineer Charles Althoff and Building Commissioner Carl Gawelek.
On July 25, 1996, representatives of the Ohio Environmental Protection Agency (Ohio EPA) inspected the Tri-County site. As a result of the inspection, the Ohio EPA cited Tri-County for violations of its Ohio EPA permit. Following notice of the Ohio EPA's action, the city revoked Tri-County's use variance on July 31, 1996. However, the city reinstated Tri-County's variance after determining the revocation to be premature, as it did not afford Tri-County an opportunity to correct the violations cited by the Ohio EPA.
On September 18, 1996, Tri-County filed a complaint against Lisa Uffman-Kirsch, NRRIC, and one hundred unknown NRRIC members. The complaint alleged defamation and malicious interference with the constitutional right to petition government for redress of grievances. On November 20, 1996, Uffman-Kirsch filed a separate answer to the complaint, together with a counterclaim alleging abuse of process and violation of her first amendment right to free speech against Tri-County. The trial court dismissed the unknown NRRIC members and the NRRIC from the action on January 31, 1997 and June 30, 1998, respectively. The case proceeded with the two remaining parties.
Following discovery, Uffman-Kirsch filed a motion for summary judgment on all claims asserted in Tri-County's complaint. The trial court granted Uffman-Kirsch's motion, without opinion, on March 11, 1999, and the case proceeded on Uffman-Kirsch's counterclaim.Tri-County filed its motion for summary judgment on Uffman-Kirsch's counterclaims on June 7, 1999. The court granted Tri-County's motion, without opinion, on July 29, 1999.
Both parties appeal the trial court's summary judgment rulings. Tri-county appeals the trial court's order granting Uffman-Kirsch summary judgment on its complaint. Uffman-Kirsch appeals the trial court's order granting Tri-County summary judgment on her counterclaims.
Before addressing the parties' assignments of error, we set forth the applicable standard of review. We review the trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C): The reviewing court evaluates the record * * * in a light most favorable to the non-moving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion. Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24,26; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741,607 N.E.2d 1140, 1143.
Civ.R. 56 provides summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994),68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 Ohio Op.3d 466, 471,364 N.E.2d 267, 273. It is well settled the party seeking summary judgment bears the burden of showing no genuine issue of material fact exists for trial. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 330,106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359, 604 N.E.2d 138, 139-140. However, the nonmoving party must produce evidence on any issue for which he or she bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; Celotex,477 U.S. at 322-323, 106 S.Ct. at 2552-2553, 91 L.Ed.2d at 273-274. In accordance with Civ.R. 56(E), a non-movant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Chaney v. Clark Cty. Agricultural Soc. (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.
Having set forth the standard of review, we begin our consideration of the merits of this appeal by reviewing Tri-County's assignments of error. In its first assignment of error, Tri-County argues the trial court erred in granting Uffman-Kirsch summary judgment on its defamation claim. Tri-County alleges Uffman-Kirsch's statements that Tri-County has a record of total disregard to the laws * * * and operates in complete defiance of a City's requirements asserted in her July 22, 1996 letter to the North Royalton Planning Commission are defamatory. Tri-County argues genuine issues of material fact exist as to whether Uffman-Kirsch's statements constituted libel.
To establish a claim for libel, the plaintiff must show (1) a false statement, (2) that is defamatory towards the plaintiff, (3) the statement must be in writing, (4) the statement must be published, and (5) the defendant must be proven guilty of some degree of fault. Gruenspan v. Seitz (1997), 124 Ohio App.3d 197, 204, 705 N.E.2d 1255,1259; Rodgers v. Buckel (1992), 83 Ohio App.3d 653, 659, 615 N.E.2d 669,673. Whether words of a publication are libelous per se is a question for the trial court, not the jury, unless, of course, the meaning is uncertain and ambiguous. Becker v. Toumlin (1956), 165 Ohio St. 549,554, 138 N.E.2d 391, 395.
Uffman-Kirsch argues her statements to the Planning Commission represented her opinions, and thus receive protection under both theFirst Amendment of the United States Constitution and Section 11, ArticleI, of the Ohio Constitution. Pure opinion statements are not actionable under defamation lawsuits. Milkovick v. Lorain Journal Co. (1990),497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1. A pure opinion statement exists when it does not state a fact that can objectively be proven false. North Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434,442, 648 N.E.2d 875, 880. Conversely, a statement objectively capable of being proven false may be actionable in a suit for defamation. Id. Whether a statement is pure opinion or opinion reasonably interpreted as stating actual fact is a question of law. Vail v. Plain Dealer Publishing Company (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182. When determining whether speech is protected opinion, a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. Id. at syllabus.
Applying the totality of circumstances approach to the instant case, we conclude Uffman-Kirsch's statements represented her opinion based on the general context of the statement and the broader context in which it appeared. Uffman-Kirsch resides in the city of North Royalton. She sent her letter as a follow-up to a public meeting of the North Royalton Planning Commission held to consider granting Tri-County a conditional use variance. She expressed her concern regarding Tri-County's effect on the community in which she resides. At the time Uffman-Kirsch sent her letter, the city considered Tri-County to be operating in violation of several of the conditions of its use variance. Further, correspondence between Tri-County and the city of Twinsburg demonstrates that Tri-County experienced similar compliance issues with that city. Under the circumstances, we conclude Uffman-Kirsch's statements that Tri-County has a record of total disregard for laws, restrictions standards and requirements of the municipality and operates in complete defiance of a City's requirements express her opinion regarding Tri-County's compliance record. Consequently, her statements are not actionable as defamatory speech. Having so concluded, we find it unnecessary to address Tri-County's arguments regarding falsity or malice. Accordingly, we overrule Tri-County's first assignment of error.
In its second assignment of error, Tri-County argues the trial court erred in granting Uffman-Kirsch summary judgment on its malicious interference with the right to petition government for redress claim based on the existence of material disputed facts. Because we conclude Tri-County failed to produce evidence sufficient to meet its burden of production on this claim, we affirm the trial court's judgment.
The Ohio Court of Appeals for the Second District recognizes the tort of malicious interference with the constitutional right to petition the government for redress of grievances. The Second District defines the tort as follows:
 The tort of malicious interference with the constitutional right to petition the government for redress of grievances (protected by Section 3, Article I of the Ohio Constitution, and by the First Amendment to the United States Constitution) occurs when a third party, without a privilege to do so, knowingly and maliciously makes a false statement for the purpose of inducing a public body to act or to fail to act, when the act, or failure to act, adversely affects the injured party.
Singer v. City of Fairborn (1991), 73 Ohio App.3d 809, 820, 598 N.E.2d 806,814. The Singer court went on to clarify its holding by stating:
 We do not go so far as to hold, however, that a mere omission may give rise to liability, since that would have an unduly chilling effect upon the speaker's exercise of his rights of free speech. To speak at all would give rise to a substantial risk that, in the heat of the moment, and perhaps, also, in the give and take of debate, some material fact would be omitted. If that, alone, could give rise to an inference of malice and the liability resulting therefrom, there would be too strong a disincentive to speak out at all concerning any controversial subject.
Id. In the instant case, Tri-County argues Uffman-Kirsch's made two false statements total disregard and complete defiance. As we concluded above, these statements represented Uffman-Kirsch's opinion of Tri-County's compliance record and as such, receive protection under both the Federal and Ohio Constitution. Further, even assuming Uffman-Kirsch's statements were not protected, Tri-County failed to meet its burden of establishing Uffman-Kirsch made the statements maliciously.
To establish actual malice in connection with Uffman-Kirsch's statements, Tri-County needed to prove Uffman-Kirsch made the statements with knowledge the statements were false or with reckless disregard as to their truth or falsity. See Gruenspan v. Seitz (1997), 124 Ohio App.3d 197,207, 705 N.E.2d 1255, 1262, citing New York Times Co. v. Sullivan (1964)376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; Wall v. Ohio Permanente Medical Group, Inc. (1997), 119 Ohio App.3d 654, 666, 695 N.E.2d 1233. Tri-County alleges Uffman-Kirsch acted in reckless disregard of the truth because she failed to reflect in her statements the fact that Tri-County acted to resolve its differences with the City of Twinsburg. However, mere omissions do not give rise to liability. Singer; see, also, Gruenspan; Wall. Rather, the party seeking relief must present evidence that defendant knew the statements were false, entertained serious doubts about whether they were false, or disregarded a high probability that they were false. Wall at 666, 695 N.E.2d at 1233. Tri-County failed to demonstrate any of these alternatives applied to Uffman-Kirsch. Therefore, we conclude the trial court correctly granted Uffman-Kirsch summary judgment on Tri-County's claim. Accordingly, we overrule Tri-County's second assignment of error.
In her sole assignment of error, Uffman-Kirsch argues the trial court erred in granting Tri-County summary judgment on her counterclaim. In her counterclaim filed with the trial court on November 20, 1996, Uffman-Kirsch stated two causes of action against Tri-County abuse of process and violation of the right to petition government, assemble, and free speech. However, Uffman-Kirsch abandoned those causes of action and does not argue for relief under either one in her brief on appeal. Instead, Uffman-Kirsch argues for relief under a cause of action not yet recognized in Ohio or any other state SLAPP BACK.
SLAPP stands for strategic lawsuit against public participation. The Supreme Court of New Hampshire describes a SLAPP suit as follows:
 Strategic lawsuits against public participation (SLAPPs) are civil lawsuits filed against non-governmental individuals and groups, usually for having communicated with a government body, official, or the electorate, on an issue of some public interest or concern. SLAPPs are filed in response to a wide range of political activities including zoning, land use, taxation, civil liberties, environmental protection, public education, animal rights, and the accountability of professionals and public officials.
 SLAPPs seek to retaliate against political opposition, attempt to prevent future opposition and intimidate political opponents, and are employed as a strategy to win an underlying economic battle, political fight, or both. The SLAPP plaintiff's goal is not necessarily to win the lawsuit, but rather to deter public participation in the democratic process by chilling debate on public and political issues. This goal is realized by instituting or threatening multimillion-dollar lawsuits to intimidate citizens into silence.
 Identifying SLAPPs, which typically appear as ordinary lawsuits, presents difficulties.
 Objective factors for identifying SLAPPs have, however, been suggested. These factors include: the defendant's activity implicates the constitutional rights of free speech and to petition for the redress of grievances; the type of legal claim is generally a claim for defamation, tortious interference with business or contract, civil conspiracy or abuse of process, constitutional or civil rights violations, or nuisance; and SLAPP filers are typically real estate developers, property owners, police officers, alleged polluters, and state or local government agencies.
Opinion of the Justices (N.H. 1994), 138 N.H. 445, 448, 641 A.2d 1012,1013-1014 (citations omitted); see, also, Duracraft Corp. v. Holmes Products Corporation (Mass. 1998), 427 Mass. 156, 691 N.E.2d 935; Briggs v. Eden Council for Hope Opportunity (Cal. 1999), 19 Cal.4th 1106,969 P.2d 564.
As Uffman-Kirsch points out in her brief, a number of state legislatures have chosen to enact anti-SLAPP laws. See Mass. Gen. L. 231, Section 59H (1992), Cal. Civil Proc. 425.16. Generally, such legislation provides a special procedure making plaintiff's complaint subject to a motion to strike, unless the court determines the plaintiff has established a probability that plaintiff will prevail on its claim. See Opinion of Justices. Defendants who prevail on such special motions are entitled to recover attorney's fees and costs. Id. The Ohio General Assembly has not yet chosen to enact anti-SLAPP legislation, and this court is constrained from recognizing such an action at this time. Beside, any party faced with this kind of lawsuit may avail herself of the frivolous lawsuit statute, which affords to the grievant ample relief including attorney fees.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, P.J., and ANNE L. KILBANE, J., CONCUR.
 __________________________ PATRICIA ANN BLACKMON JUDGE