JOHNSON, Individually and as Administrator of the Estate of Johnson, Appellee,

v.

UNIVERSITY HOSPITALS OF CLEVELAND, Appellant, et al.

[Cite as *Johnson v. Univ. Hosp. of Cleveland,* 150 Ohio App.3d 256, 2002-Ohio-6338.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 81415.

Decided Nov. 21, 2002.

Sindell, Young, Guidubaldi & Sucher, Cathleen M. Bolek, and David J. Guidubaldi, for appellee.

Arter & Hadden, L.L.P., Jeffrey M. Whitesell, Irene C. Keyse–Walker and Rita A. Maimbourg, for appellant.

TIMOTHY E. MCMONAGLE, Administrative Judge.

{¶ 1} Defendant-appellant, University Hospitals of Cleveland ("UH"), appeals from the judgment of the Cuyahoga County Common Pleas Court that, after conducting an in-camera inspection, ordered disclosure of an incident report regarding decedent, Floryne Johnson. For the reasons that follow, we affirm in part, reverse in part, and remand.

{¶ 2} The record reveals that plaintiff-appellee, Jocelyn Johnson ("Johnson"), brought the within medical negligence action against UH after her mother, Floryne Johnson, died while a patient at that facility. During the course of this contentious litigation, Johnson sought the discovery of an incident report prepared by UH regarding an incident that occurred while decedent was being transported to the radiology department.

{¶ 3} It appears from the record that an imaging study known as a VQ scan was ordered for the decedent to rule out pulmonary embolus. During the procedure, the decedent began to vomit. As the technician tried to roll the decedent onto her side she fell on the floor and sustained a laceration to the right side of her head. UH moved for a protective order claiming that this report was privileged under R.C. 2305.24, 2305.25, and 2305.251. The trial court denied the motion and contemporaneously ordered UH to produce the incident report. UH thereafter appealed to this court pursuant to R.C. 2505.02(B)(4)(a). See *Johnson ex rel. Estate of Johnson v. Univ. Hosp. of Cleveland* (Mar. 28, 2002), Cuyahoga App. No. 80117, 2002 WL 472298 (*"Johnson I"*).

{¶ 4} While we determined in *Johnson I* that incident reports such as the one at issue in this case are often protected by privilege under R.C. 2305.24, 2305.25, and 2305.251, we noted that the privilege is not absolute and such reports may be discoverable to some extent if the events giving rise to the incident are not reported in the medical record. Having found that the trial court failed to determine whether such events were included in the medical records, we reversed the judgment of the trial court and remanded with instructions for the court to conduct an in-camera comparison between the incident report and the medical

record. If the medical record did not contain a description of these events, then we concluded that limited disclosure of the incident report may be appropriate.

{¶ 5} "The trial court should have determined whether the events of the incident were properly described in the medical record. Had it determined that the events were not included in the medical record, then only the portion of the incident report describing the events would have been subject to disclosure, not the entire document." Id. at 12–14.

{¶ 6} On remand, the trial court conducted the in-camera comparison and made the following conclusion:

{¶ 7} "The court finds that the events of the incident were not properly described in the medical records, but rather are set forth in the incident report. The incident report is relevant and, the incident report, unlike the medical records, includes typed statements of the technician and radiology resident who were present in the Nuclear Medicine Department on the evening in question. Certainly, these reports are closer in time than any deposition testimony of these individuals. The statements in the incident report include much more detail and are easier to read than any other chart notes. The 'stat' order for the ventilation test which provides the instructions and precautions to be taken by the technician administrating [sic] the test is attached to the incident report and is not part of the medical records."[1]

{¶ 8} The court thereafter ordered disclosure of the incident report after redacting not only the personal identifying information regarding the supervisor who completed the report but also any recommendations made as a matter of course in preparing the report.

{¶ 9} UH is now before this court yet again and contends in its sole assignment of error that the trial court erred in ordering disclosure of the incident report.

■ {¶ 10} As pertains to pretrial discovery, this court has held that an in-camera inspection conducted by the trial court is reviewed under an abuse-of-discretion standard. *Radovanic v. Cossler* (2000), 140 Ohio App.3d 208, 213, 746 N.E.2d 1184, citing *Wall v. Ohio Permanente Med. Group Inc.* (1997), 119 Ohio App.3d 654, 695 N.E.2d 1233. Notwithstanding this standard of review, we must determine whether the trial court employed the appropriate rule of law in the exercise of that discretion. *Wands v. Maple Hts. City School Dist. Bd. of Edn.* (Aug. 24, 2000), Cuyahoga App. No. 76198, 2000 WL 1222007.

---

1. The record reveals that UH has submitted this journal entry under seal. We note, however, that the journal entry is contained in the record and is again recited verbatim as an entry on the court's docket sheet.

{¶ 11} We stated in Johnson I that the trial court was to conduct an in-camera comparison between the medical record and the incident report to determine whether the medical record "properly explained" the events giving rise to the incident report. Under *Johnson I*, we determined that such events are considered properly explained if they are included in the medical record.

{¶ 12} Our review of the medical record in this case supports that the following notation was made:

{¶ 13} "Pt taken to Radiology for VQ scan for possible PE. During procedure pt started to vomit. To avoid aspiration, Radiologist tried to roll pt on her side. Pt fell on the floor sustained a laceration on rt side of head."

{¶ 14} Johnson contends that this notation was not made by any of the health care practitioners who provided care to the decedent and, in fact, was made on the reverse side of a form authorizing decedent's body to be released to the county coroner sometime after the decedent died. Johnson further maintains that this notation is neither signed nor dated in contravention of UH's own rules and regulations, which require clinical entries in a patient's record to be dated and signed by the health care practitioner. Indeed, Johnson intimates that this notation was made after she filed this lawsuit and, as such, is an attempt to cover up the events as they really occurred.

{¶ 15} While we reach no such conclusion regarding Johnson's latter contention, nor is that issue before us, we find that the referenced notation does not suffice as a proper description of the events giving rise to the incident report. We acknowledge that we determined in *Johnson I* that an event is properly explained when it is included in the medical record. Nonetheless, our review of the medical record supports that while several entries were made by the various practitioners regarding the decedent's *medical* course while attempting the VQ scan, there were no signed and dated entries documenting that the decedent had fallen from the scan table. For example, the admitting note entered on July 17, 2000, reported that a "code" was called to Nuclear Medicine at 2:20 a.m. and that, upon arrival there, the decedent was on the floor. This same practitioner noted the laceration on decedent's head and that it would require repair when the acute issues were resolved. A resident's note reported that the decedent did not tolerate the VQ scan procedure and was "pulled out unresponsive," vomited, and "moved" to the floor. A nurse's note on the same date recorded that the decedent was "sent down to VQ scan," where she began to vomit, lost consciousness, and suffered respiratory arrest. A note made by a neurocritical care practitioner later that same day reported that the decedent experienced cardiorespiratory arrest while in VQ scan. A consultation report recorded that decedent did not tolerate the VQ procedure and became unresponsive with an episode of

vomiting. The discharge summary reported that the decedent, while in nuclear medicine, had an "unresponsive event" followed by vomiting.

{¶ 16} These notations are the extent of the documentation as pertains to the events surrounding decedent's fall from the scan table. Each of these notations was contained in some logical order within the decedent's medical record and was signed and dated by the respective practitioner. The same cannot be said of the notation that UH argues documents the same events and serves as the basis for the incident report. The notation, which is contained on the reverse side of an "Authorization for Release of Deceased Patient," is neither dated nor signed. Although in and of itself of little consequence if the note had been dated and signed, the notation is contained in a section of the medical record not typically or traditionally known for the entering of clinical notes or otherwise documenting a patient's medical course. Without knowing who authored the note or when, it cannot be said that the events giving rise to the incident report were properly included in the decedent's medical record as is required by *Johnson I*.[2] That being said, the incident report is subject to disclosure to the extent that decedent's fall is described.

{¶ 17} In order that our opinion here today not be misunderstood, we reiterate that in order for an incident report to remain confidential, the events giving rise to the incident report must be included in the medical record. Contrary to the trial court's interpretation of *Johnson I*, the directive to determine whether the medical record "properly describes" an incident does not require a qualitative comparison between the incident report and the medical record. Disclosure is not mandated merely because the incident report is easier to read because it includes typewritten statements as opposed to handwritten medical notes. Nor did *Johnson I* require that an incident report be qualitatively compared to the deposition testimony of those individuals providing statements for the incident report. A trial court is not called upon to provide subjective commentary on any perceived evidentiary quality that disclosure of the incident report may hold. To the contrary, a trial court is to determine whether the events giving rise to the incident report were included in the medical record in the same fashion and manner that all clinical notations are made. This does not require, as Johnson seems to intimate, that the individuals involved in the incident must make a notation as to these events. As long as the events giving rise to an incident report are notated and included in the patient's medical record, an incident report governing them is not subject to disclosure.

---

**2.** While the parties agreed at oral argument that the notation was made by a mortician, the medical record *itself* does not contain any notation of when or by whom the notation was made.

{¶ 18} Johnson further contends that the "stat" order for the VQ test attached to the incident report is not contained in the medical record and should be since it is a medical record. Our review of the record supports that the stat order is contained in the medical record as an order entered July 17, 2000, as are all other orders entered by the various practitioners on the various dates. The particular requisition sheet attached to the incident report, which contains the order directing the radiology department to conduct the test, may be an internal record of the radiology department that is not part of a patient's record. Be that as it may, the stat order does not contain any information that describes the events surrounding decedent's fall from the scan table and therefore would not be subject even to limited disclosure as part of the incident report.

{¶ 19} The judgment of the trial court is affirmed in part, reversed in part, and remanded. We affirm the trial court's judgment to the extent that the incident report is subject to disclosure but reverse as to the extent of that disclosure. A redacted version of the incident report is hereby filed under seal, and the trial court is instructed on remand to enter an order disclosing the incident report consistent with this redacted version.

{¶ 20} This cause is affirmed in part, reversed in part, and remanded for proceedings consistent with the opinion herein.

Judgment accordingly.

KENNETH A. ROCCO and COLLEEN CONWAY COONEY, JJ., concur.