VANGUARD TRANSPORTATION SYSTEMS, INC., Appellee,

v.

EDWARDS TRANSFER & STORAGE COMPANY, GENERAL
COMMODITIES DIVISION, Appellant.

[Cite as *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage
Co., Gen. Commodities Div.* (1996), 109 Ohio App.3d 786.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 95APE08–1029, 95APE09–1202.

Decided March 12, 1996.

*Gamble Hartshorn Alden, Kenneth A. Gamble* and *Craig A. Smith,* for appellee.

*Baker & Hostetler, David C. Levine* and *A. Charles Tell,* for appellant.

CLOSE, Judge.

This is a consolidated appeal from two separate contempt orders and fee awards made by the Franklin County Court of Common Pleas against defendant-appellant, Edwards Transfer & Storage Co., General Commodities Division ("Edwards").

Plaintiff-appellee, Vanguard Transportation Systems, Inc. ("Vanguard"), is an Ohio corporation in the business of arranging and transporting freight for customers. Vanguard's drivers consist of company drivers and owner-operators, who are under lease to Vanguard. Edwards is also an Ohio corporation in the freight-hauling business and is a competitor of Vanguard's. It is undisputed that there is strong competition for customers and drivers in this industry.

Vanguard expanded its business into the Indianapolis, Indiana market, employing Barbara Smithhart in 1988 as a dispatcher, until her resignation on March 27, 1995. There were no employment or noncompetition agreements between Vanguard and Smithhart. In her role as dispatcher, Smithhart had access to all of Vanguard's proprietary information, including rates charged to customers, customer lists and drivers under lease to Vanguard.

In August 1994, Smithhart contacted Wallace Sanders, vice-president of Edwards, to discuss the possibility of becoming an agent for Edwards. After a second meeting with Sanders in early 1995, Smithhart arranged a meeting between Sanders and Tom Baker, the traffic manager for Odin Brass; at that time, Odin Brass represented approximately seventy percent of Vanguard's

business in Indianapolis. Smithhart attended the meeting, during which the parties discussed the possibility of Edwards becoming Odin Brass's freight transporter.

On or about March 1, 1995, Smithhart leased an office for Edwards located next door to Vanguard's office. It is undisputed that, during the month of March, Smithhart diverted twenty-three loads of freight from Vanguard to Edwards, using rates and information she acquired from Vanguard. Smithhart told Vanguard's drivers that Edwards would acquire Odin Brass's business, that she was acting on behalf of Edwards, and that she was going to be an agent for Edwards, thereby enabling her to recruit eight drivers away from Vanguard to work for Edwards. On March 27, 1995, Smithhart left Vanguard's employ and, later that day, began work as an agent for Edwards at the office she had leased for Edwards next to Vanguard's offices, taking with her files belonging to Vanguard, which included the customer/shipper files.

Vanguard filed suit against Edwards in the Franklin County Court of Common Pleas on March 29, 1995, demanding return of the files that Smithhart had removed from the Vanguard office. The files were returned shortly thereafter. In the complaint, Vanguard sought to enjoin Edwards from using and misappropriating the information which Vanguard alleged constituted its trade secrets.

An evidentiary hearing was held to consider Vanguard's motion for a preliminary injunction. The trial court granted Vanguard's request for a preliminary injunction, entering its order on June 30, 1995 enjoining Edwards "from misappropriating or utilizing any customer/shipper files, contract rate quotes, mileage and rate schedules, driver lists and files, corporate financial information, policy statements, price structures and training information belonging to Vanguard until a final decision on the merits of this case."

On July 21, 1995, Vanguard filed a show cause motion against Edwards, wherein the trial court, after a hearing on August 4, 1995, found that Edwards had violated the June 30, 1995 preliminary injunction by using the information it had procured from Vanguard's files. The trial court issued its order, assessing Edwards a fine of $250, attorney fees and costs, and amending the June 30, 1995 preliminary injunction to prohibit "its agents, employees, officers, affiliates and assigns * * * from transacting any business whatsoever, directly or indirectly, at 4585 South Harding, Room 109, Indianapolis, Indiana, or the building in which it is situated."

Once again, on August 15, 1995, Vanguard filed a show cause motion alleging that Edwards was in contempt of the preliminary injunction, as amended. A hearing on this second motion was held on September 8, 1995, with the trial court further finding Edwards in contempt of its August 4, 1995 order, and ordering Edwards to pay a fine of $500, attorney fees and costs.

Edwards filed separate appeals from each of the contempt orders and fee awards, which this court consolidated. Edwards now brings the following assignments of error:

"First Assignment of Error

"The trial court erred by granting Plaintiff–Appellee's Motion for Preliminary Injunction. * * *

"Second Assignment of Error

"The trial court erred by finding Defendant–Appellant in contempt of court on two separate occasions, August 4 and September 8, 1995. * * *

"Third Assignment of Error

"The trial court erred by awarding Plaintiff–Appellee's attorneys' fees and by awarding costs of depositions. * * * "

It is well settled that an appellate court will not reverse the decision of a lower court in a contempt proceeding absent an abuse of discretion. *Internatl. Merchandising Corp. v. Mearns* (1989), 63 Ohio App.3d 32, 577 N.E.2d 1128; *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 19 O.O.3d 191, 417 N.E.2d 1249. A court has authority to punish the disobedience of its orders with contempt proceedings. *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 9 OBR 505, 459 N.E.2d 870 syllabus.

In deciding whether to grant a preliminary injunction, a court must look at (1) whether there is a substantial likelihood that plaintiff will prevail on the merits, (2) whether plaintiff will suffer irreparable injury if the injunction is not granted, (3) whether third parties will be unjustifiably harmed if the injunction is granted, and (4) whether the public interest will be served by the injunction. *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.* (1986), 24 Ohio St.3d 41, 24 OBR 83, 492 N.E.2d 814, *Goodall v. Crofton* (1877), 33 Ohio St. 271. Further, the party seeking the preliminary injunction must establish a right to the preliminary injunction by showing clear and convincing evidence of each element of the claim. *Mead Corp., Diconix, Inc., Successor v. Lane* (1988), 54 Ohio App.3d 59, 560 N.E.2d 1319.

In its first assignment of error, Edwards contends that a preliminary injunction is improper because the information which Vanguard seeks to protect is information that is generally known in the industry, that the information does not constitute a trade secret, and that Vanguard has an adequate remedy at law. Edwards asserts that the information at issue in this case is not a trade secret and, further, that Vanguard took no special precautions to keep the information secret, nor could it have because this information was generally available to the public.

■ "Trade secret" is defined in R.C. 1333.61(D), as follows:

" 'Trade secrets' means information, including the whole or any portion or phase of any * * * formula, * * * compilation, * * * method, technique, * * * or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

"(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

"(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

The Ohio Supreme Court, in *Consumer Direct, Inc. v. Limbach* (1991), 62 Ohio St.3d 180, 580 N.E.2d 1073, held that a customer list is an intangible asset which an owner may keep from its competitors. There is a presumption of secrecy regarding a customer list when an owner thereof takes measures to prevent it, in the ordinary course of business, from being available to persons other than those selected by the owner. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer* (N.D.Ohio 1992), 816 F.Supp. 1242. "[T]he question of whether a particular knowledge or process is a trade secret is a question of fact to be determined by the trier of fact upon the greater weight of the evidence." *Valco*, 24 Ohio St.3d at 47, 24 OBR at 88, 492 N.E.2d at 819; *Water Mgt., Inc. v. Stayanchi* (1984), 15 Ohio St.3d 83, 15 OBR 186, 472 N.E.2d 715.

As the trier of fact, the lower court heard the testimony of several witnesses, specifically that of Douglas J. Menne, the president of Vanguard, who testified that the rates which carriers charge their customers are not public knowledge. The testimony of Menne was corroborated by Sanders, the vice-president of Edwards, who admitted that carriers do not know exactly what other carriers are charging, and that contract rate quotes are not the type of information that another carrier is able to obtain. In addition, the court heard the testimony of Smithhart, who stated that she understood that she was not to disclose the information which she disclosed to Edwards.

The lower court also heard testimony as to the precautionary measures taken by Vanguard to keep such information secret. Most of the information taken by Smithhart, and used in furtherance of Edwards's business, was information that was available to only several employees of Vanguard. While there was no confidentiality agreement between Smithhart and Vanguard, the evidence shows that there was an understanding by Menne and Smithhart that Smithhart was not to disclose information pertaining to customer lists, driver lists and rate quotes. Menne testified that he had spoken to Smithhart regarding the confidential nature of the information to which she was privy. Even Sanders testified

that he considers Edwards's customer files protected information. Although a list of shippers may be found in The Harris Industrial Guide, a freight industry publication, there is no readily available means by which a carrier can specifically identify another carrier's customers, traffic managers or commodity information.

We hold that the lower court's decision, finding that Edwards misappropriated trade secrets belonging to Vanguard, was supported by competent, credible evidence. The evidence demonstrates that Vanguard's information was of a nature that was not readily accessible to the general public and that Vanguard sought to keep confidential. The information misappropriated by Smithhart was information that took Vanguard years of time and effort to collect. The testimony by Sanders evinced that it literally would have taken Edwards years to do what it was able to do virtually overnight.

■ Edwards contends, however, that money damages would compensate Vanguard, rendering a preliminary injunction unnecessary. R.C. 1333.62(A) provides for an injunction against actual or threatened misappropriation of trade secrets. R.C. 1333.61(B) defines "misappropriation" as:

"(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

"(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
" * * *

"(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use."

Therefore, an injunction may be granted where there has been a misappropriation of· a trade secret. In order to determine whether an injunction was appropriate in this particular case, the trial court considered the *Valco* factors for issuing a preliminary injunction and found (1) that there was a substantial likelihood that Vanguard would prevail on the merits because the court found that the business information was a trade secret and that Edwards had misappropriated those trade secrets, (2) that Vanguard would suffer irreparable injury if the injunction was not granted because not all damage could be easily measured, (3) that third parties would not be unjustifiably harmed if the injunction was granted because third parties would not be affected, and (4) that public interest would be served by the injunction in that this was a matter of upholding commercial ethics. Therefore, as the court found· that these factors had been met, it properly issued

the preliminary injunction. We find that Vanguard has established its case by clear and convincing evidence. *Mead.*

Edwards's first assignment of error is not well taken, and it is hereby overruled.

 We shall next address the issue presented by Edwards's second assignment of error, which is whether bond is required in order for a preliminary injunction to be operative, pursuant to Civ.R. 65(C), which reads:

"No temporary restraining order or preliminary injunction is operative until the party obtaining it gives a bond executed by sufficient surety * * * in an amount fixed by the court or judge allowing it * * *."

Edwards contends that the language of Civ.R. 65(C) renders bond mandatory, and that a preliminary injunction order without a bond is not operative.

We find persuasive the reasoning set forth in *Colquett v. Byrd* (1979), 59 Ohio Misc. 45, 13 O.O.3d 220, 392 N.E.2d 1328, a trial court case out of Mansfield, Ohio. The court in *Colquett* admitted that, at first glance, Civ.R. 65(C) appears to require the fixing and posting of bond. *Colquett* reviewed federal cases which analyzed Fed.R.Civ.P. 65(C), which is similar to Ohio Civ.R. 65(C). *Continental Oil Co. v. Frontier Refining Co.* (C.A.10, 1964), 338 F.2d 780; *Ferguson v. Tabah* (C.A.2, 1961), 288 F.2d 665; *Urbain v. Knapp Brothers Mfg. Co.* (C.A.6, 1954), 217 F.2d 810; *Bivins v. Bd. of Public Edn. & Orphanage for Bibb Cty.* (M.D.Georgia 1967), 284 F.Supp. 888. The court in *Colquett* reasoned that, because of the similarities of the statutes in giving the court discretion to set the amount of surety, and because federal courts have reasoned similarly, a "court has the power to set the bond at nothing ($0.00)." *Colquett,* 59 Ohio Misc. at 49, 13 O.O.3d at 223, 392 N.E.2d at 1331.

This court finds little difference in requiring nominal bond versus no bond at all; the letter of Civ.R. 65(C) is served, but the effect is that of requiring no bond at all. If the court has discretion, as a reading of Civ.R. 65(C) implies, then the court's discretion "as to the amount of the bond includes discretion to require no bond at all, since the court, in theory, may fix the amount of bond as zero dollars, or at a nominal sum, such as one dollar." 56 Ohio Jurisprudence 3d (1984) 387, Injunctions, Section 180. Moreover, this court reasons that, as the preliminary injunction merely required Edwards to refrain from taking actions, which he was already by law obliged to refrain from doing, *i.e.,* misappropriating trade secrets belonging to Vanguard, Edwards could suffer no additional damages for which bond was necessary.

In holding that bond was not required in order for the preliminary injunction to be operative, we hold that the lower court properly found Edwards in contempt of the preliminary injunction.

■ Edwards next contends that it did not violate the provisions of the injunction. The June 30, 1995 preliminary injunction prohibited Edwards from "misappropriating or utilizing any customer/shipper files, contract rate quotes, mileage and rate schedules, driver lists and files, corporate financial information, policy statements, price structures and training information" belonging to Vanguard. Edwards argues that Smithhart returned the files to Vanguard immediately after Vanguard requested them. Edwards alleges that the August 4, 1995 contempt hearing found it in contempt for working out of the office, not for using or possessing the files Smithhart had previously taken. Edwards further contends that, at the September 8, 1995 hearing finding it guilty of a second contempt, there was no evidence that Smithhart was doing business out of the office, only that she was in the office.

Evidence presented at the August 4, 1995 hearing demonstrated that Smithhart, on July 14, 1995, had contacted a driver from the Vanguard driver list, whose telephone number was unlisted, thereby proving that Smithhart was using Vanguard's protected business information, specifically, driver telephone lists. After the court further enjoined Edwards on August 4, 1995 from transacting business at the office next to Vanguard's Indianapolis office, evidence was presented that Smithhart was still meeting drivers in that office after August 4, 1995.

This court finds that there was sufficient evidence from which the lower court could find that Edwards violated the terms of the preliminary injunction, as first written and as amended. Edwards's second assignment of error is not well taken and is overruled.

■ Finally, we address Edwards's third assignment of error, which states that the lower court improperly awarded attorney fees and costs of depositions not used at hearing to Vanguard. Contempt sanctions are largely a matter of discretion. *Arthur Young & Co. v. Kelly* (1990), 68 Ohio App.3d 287, 588 N.E.2d 233. The general rule in Ohio is that attorney fees cannot be taxed as a cost in a contempt proceeding. 17 Ohio Jurisprudence 3d (1980) 401, Contempt, Section 69. However, exceptions to this rule have been made in cases such as *State ex rel. Fraternal Order of Police v. Dayton* (1977), 49 Ohio St.2d 219, 3 O.O.3d 360, 361 N.E.2d 428, which held, at the syllabus:

"A trial court has discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt."

A trial court may, within its discretion, include attorney fees as part of the costs taxable to a defendant found guilty of civil contempt. *McDaniel v. McDaniel* (1991), 74 Ohio App.3d 577, 599 N.E.2d 758; *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 556 N.E.2d

157. We find, therefore, that attorney fees were within the discretion of the lower court to award to Vanguard.

 With regard to awarding costs, Edwards argues that the depositions of Menne and Sanders were not used at trial and, therefore, cannot be assessed against it as costs. Edwards cites *Barrett v. Singer Co.* (1979), 60 Ohio St.2d 7, 14 O.O.3d 122, 396 N.E.2d 218, for the proposition that costs of depositions not used at trial may not be taxable to the defendant.

 "In contempt proceedings, as in other cases, where costs are not a matter of statutory right, the award of costs lies within the discretion of the court." 17 Ohio Jurisprudence 3d (1980) 401, Contempt, Section 69. We rely on the decision of this court in *Grant v. Forgash* (Dec. 26, 1995), Franklin App. No. 95APE06–792, unreported, 1995 WL 765154, wherein this court held that the term "used at trial" includes deposition testimony actually read into evidence during cross-examination. The depositions of both Sanders and Menne were used in the August 4, 1995 proceedings. First, counsel for Vanguard asked Sanders on cross-examination:

"Q. Mr. Sanders, you recall your deposition being taken by me just this past Monday, don't you?

"A. Correct.

"Q. Do you recall this question being posed to you? This is on page 6, lines 1 through 3.

" 'In the chain of command * * *'."

Second, counsel for Edwards asked Menne on cross-examination:

"Q. Okay. Do you remember at your deposition I asked you the following question—

"Mr. Smith: Can we have a reference, please?

"Q. Page 6, line 16. I said—I asked you this question. 'Okay. After that date,' * * *."

This court in *Grant* held that counsel quoting from the deposition when asking a question on cross-examination was sufficient to render the deposition "used at trial." As counsel for both sides referred to and quoted from the depositions of Menne and Sanders, we hold that the depositions were used at trial, and, therefore, the trial court had discretion to award those costs to Vanguard as well. We overrule Edwards's third assignment of error.

Edwards's assignments of error are overruled, and the judgments of the trial court are affirmed.

*Judgments affirmed.*

LAZARUS and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.