SINOFF, Appellant,

v.

OHIO PERMANENTE MEDICAL GROUP, INC., Appellee.

[Cite as *Sinoff v. Ohio Permanente Med. Group,
Inc.,* 146 Ohio App.3d 732, 2001-Ohio-4186.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 79649.

Decided Jan. 30, 2002.

**734**

Walter & Haverfield, L.L.P., Michael J. Jordan and Susan M. Zidek; Michael E. Siegel; Fifner & Associates and Timothy P. Whitford, for appellant.

Benesch, Friedlander, Coplan & Aronoff, LLP, and David L. Levine, for appellee.

———

JAMES D. SWEENEY, Presiding Judge.

{¶ 1} Plaintiff-appellant Clive Sinoff, M.D., appeals from the trial court's decision granting the motion of defendant-appellee Ohio Permanente Medical Group, Inc. ("OPMG") to dismiss count one[1] of appellant's complaint. The appellant also appeals from the court's decision to deny his motion for a preliminary injunction.

{¶ 2} On March 26, 2001, the appellant filed a verified complaint alleging that the appellee violated his due process rights in its termination procedures and that the appellee breached his contract of employment. The appellant's motion for a temporary restraining order was granted the next day. On April 2, 2001, the appellee filed its motion to dismiss count one of the complaint. A preliminary injunction hearing was held on April 3, 2001, and at the hearing the trial court granted the appellant time to respond to the motion to dismiss. The court issued the order that is the basis for this appeal.

———

1. The second count of the appellant's complaint sounds in contract and is still pending. The trial court's order stated that there was no just reason to delay and after review of the issues, this court finds the appeal properly before this court.

{¶ 3} In the complaint, the appellant alleges that he became an oncologist with the appellee in November 1994. He stated that he had more than 900 patients, had the highest patient survival rate within his department, and that he received outstanding evaluations and the respect of his colleagues, nurses, and patients. Dr. Sinoff was the Chief of the Hematology/Oncology Department from the date of his employment until December 15, 1999. The complaint states that, "[a]s an employee of OPMG, Dr. Sinoff was granted medical staff privileges to practice at OPMG institutions."

{¶ 4} The appellant states in the complaint that on February 23, 2000, he received his first negative annual review, which was full of unsubstantiated and erroneous conclusions. Dr. Sinoff was not notified until approximately May 5, 2000, that a peer review of his medical staff privileges was planned. On May 8, 2000, the appellant was placed on administrative leave pending the outcome of a peer review hearing that was scheduled for June 1, 2000. The appellant did not receive the letter of notification for the hearing until May 24, 2000. The complaint alleges, "No notice furnished to Dr. Sinoff complied with the Health Care Quality Improvement Act, 42 U.S.C. 11112(b)."

{¶ 5} After the peer review hearing, revocation of the appellant's medical staff privileges and termination of his employment was recommended by the committee and then approved by the OPMG board of directors. This decision was appealed to the Professional Liability Review Committee ("PLRC"). This hearing was conducted over a two-month period, from November 2000 to January 2001. The hearing panel upheld the appellant's termination of employment and clinical privileges despite finding that:

{¶ 6} "A) At no time during its deliberations did the members of the PLRC or the oncologist on whom they relied for expert advice have access to the full medical record for the ten cases that were the basis for the PLRC's recommendations.

{¶ 7} "B) The PLRC did not provide Dr. Sinoff with an adequate opportunity to prepare for the PLRC interview on June 1, 2000.

{¶ 8} "C) At no time during the deliberations by the PLRC did the oncologist consulted by the PLRC discuss Dr. Sinoff's treatment decisions with Dr. Sinoff nor was Dr. Sinoff given an opportunity to discuss these treatment decisions with the PLRC's consulting oncologist.

{¶ 9} "D) Dr. Sinoff's referrals for hospice care were consistent with the practices of other oncologists at OPMG and the criticisms of the hospice referrals were not borne out by a full exposition of the facts."

{¶ 10} The appellant's complaint specifies that the Medical Staff Bylaws require OPMG to bear the burden of proof of coming forth with evidence to

support its decision. Thereafter, the physician has the burden of proving, by a preponderance of the evidence, that the action to terminate clinical privileges was not supported by substantial evidence. Dr. Sinoff states in the complaint that this standard violated his due process rights because the initial decision to revoke his privileges was made without full review of the medical records, without an adequate opportunity to prepare for the review, with no discussion with him regarding his treatment decisions, and with clear mistakes regarding his hospice care referral patterns.

{¶ 11} The appellant's complaint states that the action of the appellee was arbitrary, capricious, unreasonable, and in violation of the due process requirements mandated by R.C. 3701.351(A). Further, he states that OPMG improperly terminated his employment in that it stemmed solely from the wrongful revocation of his medical staff privileges.

{¶ 12} In the first count of the complaint, Dr. Sinoff states that R.C. 3701.351(A) " 'expressly provides that the governing body of every hospital shall set standards and procedures to be applied by the hospital and medical staff in considering and acting upon applications * * * or professional privileges.' " He also asserts that his termination was without factual support, that he has and will continue to suffer irreparable damage, for which there is no adequate remedy at law, due to the appellee's arbitrary, capricious, and unreasonable actions. The complaint states, "Unless enjoined and restrained from doing so, OPMG will report the wrongful revocation of Dr. Sinoff's privileges to the National Practitioner Data Bank, Ohio State Medical Board, or other public or private agencies or persons, causing additional irreparable harm to Dr. Sinoff."

{¶ 13} The appellant sets forth two assignments of error.

{¶ 14} The first assignment of error:

{¶ 15} "The trial court erred in dismissing appellant's cause of action for due process violations."

{¶ 16} The appellant asserts that his procedural due process rights were violated by his employer and that his employer was required under both Ohio statutory and common law to provide him with those rights. The appellee counters with assertions that the appellant failed to specifically mention R.C. 1753.09(A) in the complaint; that the appellant is not a hospital and therefore common-law due process requirements are not applicable; it is not a hospital and therefore R.C. 3701.351 is not applicable; and, that the appellant failed to clearly assert a claim for relief under the federal Health Care Quality Improvement Act ("HCQIA").

{¶ 17} The Ohio Supreme Court has noted the necessity of construing, under Civ.R. 12(B)(6), all inferences in the plaintiff's favor. See *Wampler v. Higgins*

(2001), 93 Ohio St.3d 111, 752 N.E.2d 962, citing *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 649 N.E.2d 182. When reviewing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court is required to view all of the allegations of the complaint as true. *Butler v. Cuyahoga Cty. Dept. of Human Serv.* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554. See, also, *Taylor v. London* (2000), 88 Ohio St.3d 137, 723 N.E.2d 1089, which states that it is clear, as a matter of law, that the allegations of appellant's complaint must be accepted as true. See, also, *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753. Further, in *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, the Ohio Supreme Court found that it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. The plaintiff must be afforded all reasonable inferences possibly derived from the allegations in the complaint. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 706 N.E.2d 323.

{¶ 18} In *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063, the court reiterated the above standard and gave the following reason:

{¶ 19} "This standard for granting a motion to dismiss is in accord with the notice pleading regimen set up by the Federal Rules of Civil Procedure and incorporated into the Ohio Rules of Civil Procedure. Under these rules, a plaintiff is not required to prove his or her case at the pleading stage. Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence. *Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.*" (Emphasis added.)

{¶ 20} On appeal, the appellant asserts that the appellee failed to afford him his due process rights pursuant to R.C. 1753.09(A), R.C. 3701.351(A), Ohio common law, and Section 11112(b), Title 42, U.S.Code, the HCQIA. Prior to discussing the individual statutes, this court is confronted with the question of defining the exact nature of the OPMG entity. This is an issue not addressed in the complaint, and thus the appellee asserts that the complaint must fail in its entirety. This view is too simplistic. Based upon the Ohio Supreme Court's holding in York, supra, the appellant was not required to specify each and every detail of every possible claim. This court must analyze whether there is a set of facts that would allow the appellant to recover.

{¶ 21} In *Wall v. Ohio Permanente Med. Group* (1997), 119 Ohio App.3d 654, 695 N.E.2d 1233, this court concluded that OPMG is a professional corporation

that provides services under contract to the Kaiser Foundation Health Plan, a non-profit HMO. This court found that OPMG served as a peer review committee of the HMO. Thus, OPMG was given the benefit of the privilege given to peer review committees of an HMO under R.C. 2305.25(F). In applying *Wall* to the case sub judice, it is permissible to consider OPMG equivalent to Kaiser, the HMO to which the appellee provides services.

{¶ 22} Turning next to the statutes cited by the appellant, the legislature has made the following pertinent determinations in R.C. 1753.09:

{¶ 23} "(A) Except as provided in division (D) of this section, prior to terminating the participation of a provider on the basis of the participating provider's failure to meet the health insuring corporation's standards for quality or utilization in the delivery of health care services, a health insuring corporation shall give the participating provider notice of the reason or reasons for its decision to terminate the provider's participation and an opportunity to take corrective action. The health insuring corporation shall develop a performance improvement plan in conjunction with the participating provider. If after being afforded the opportunity to comply with the performance improvement plan, the participating provider fails to do so, the health insuring corporation may terminate the participation of the provider.

{¶ 24} "(B)(1) A participating provider whose participation has been terminated under division (A) of this section may appeal the termination to the appropriate medical director of the health insuring corporation. The medical director shall give the participating provider an opportunity to discuss with the medical director the reason or reasons for the termination.

{¶ 25} "(2) If a satisfactory resolution of a participating provider's appeal cannot be reached under division (B)(1) of this section, the participating provider may appeal the termination to a panel composed of participating providers who have comparable or higher levels of education and training than the participating provider making the appeal. A representative of the participating provider's specialty shall be a member of the panel, if possible. This panel shall hold a hearing, and shall render its recommendation in the appeal within thirty days after holding the hearing. The recommendation shall be presented to the medical director and to the participating provider.

{¶ 26} "(3) The medical director shall review and consider the panel's recommendation before making a decision. The decision rendered by the medical director shall be final.

{¶ 27} "(C) A provider's status as a participating provider shall remain in effect during the appeal process set forth in division (B) of this section unless the termination was based on any of the reasons listed in division (D) of this section.

{¶ 28} "(D) Notwithstanding division (A) of this section, a provider's participation may be immediately terminated if the participating provider's conduct presents an imminent risk of harm to an enrollee or enrollees; or if there has occurred unacceptable quality of care, fraud, patient abuse, loss of clinical privileges, loss of professional liability coverage, incompetence, or loss of authority to practice in the participating provider's field; or if a governmental action has impaired the participating provider's ability to practice."

{¶ 29} Clearly, R.C. 1753.09(A) provides that a health insuring corporation must give a doctor notice of its reasons for termination and an opportunity to take corrective action. R.C. 1753.09(D), however, provides that there are certain instances in which the opportunity to take corrective action need not be given, i.e., where the doctor resents an imminent risk of harm to patients. The question before this court is whether or not the appellant's complaint stated a claim pursuant to R.C. 1753.09. While the statute is not directly mentioned in the complaint, this does not end our inquiry. See *York*, supra. Given that the *Wall* court found OPMG to be an HMO, this court must find that the appellant adequately stated a claim pursuant to R.C. 1753.09 and that the trial court erred in granting the appellee's motion to dismiss the complaint on this statute.

{¶ 30} R.C. 3701.351 sets forth the standards and procedures for staff membership and professional privileges. R.C. 3701.351(A) states:

{¶ 31} "(A) The governing body of every hospital shall set standards and procedures to be applied by the hospital and its medical staff in considering and acting upon applications for staff membership or professional privileges. These standards and procedures shall be available for public inspection."

{¶ 32} The very language used by the legislature makes the language of the statute applicable only to hospitals. In *Wall*, supra, this court found the appellee to be a professional corporation providing services to Kaiser, an HMO. There is no indication in the complaint that the appellee has acted as a hospital, and based on the binding precedent in *Wall*, supra, this court will not read such an assumption into the complaint. The same logic applies to the appellant's claims under Ohio common law. The appellant has not cited one case in which an HMO or professional group was found to have breached a common-law right to due process.

{¶ 33} Finally, it has been held that the HCQIA, Section 11112(b), Title 42, U.S.Code, does not afford a physician a private right of action. See *Wayne v. Genesis Med. Ctr.* (C.A.8, 1998), 140 F.3d 1145, where the court joined the Tenth and Eleventh Circuits in concluding that the HCQIA does not explicitly or implicitly afford aggrieved physicians a cause of action when a hospital fails to follow the HCQIA's prescribed peer review procedures. See *Hancock v. Blue*

Cross–Blue Shield of Kansas, Inc. (C.A.10, 1994), 21 F.3d 373, 374–375, holding that the HCQIA does not explicitly or implicitly create a private cause of action for physicians subjected to peer review and that Congress did not intend to create cause of action for benefit of physicians. See, also, *Bok v. Mut. Assur., Inc.* (C.A.11, 1997), 119 F.3d 927 (per curiam), where the court agreed with Hancock and held that HCQIA does not create cause of action for physicians. In accord, *Brown v. Med. College of Ohio* (N.D.Ohio 1999), 79 F.Supp.2d 840.

{¶ 34} The appellant's first assignment of error is overruled as to claims under the Ohio common law, the HCQIA, and R.C. 3701.351. The appellant's first assignment of error is well taken as to claims made pursuant to R.C. 1753.09.

{¶ 35} The second assignment of error:

· {¶ 36} "The trial court erred in denying appellant's motion for preliminary injunction."

{¶ 37} The appellant argues that the trial court should have granted his motion for a preliminary injunction and enjoined the appellee from reporting its decision to the National Practioner's Data Bank.

{¶ 38} The issue whether to grant or deny an injunction is a matter solely within the discretion of the trial court and a reviewing court will not disturb the judgment of the trial court in the absence of a clear abuse of discretion. *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.* (1995), 73 Ohio St.3d 590, 653 N.E.2d 646, paragraph three of the syllabus. In reviewing a preliminary injunction, this court, in *Cavanaugh Bldg. Corp. v. Cuyahoga Cty. Bd. of Commrs.* (Jan. 27, 2000), Cuyahoga App. No. 75607, 2000 WL 86554, found the standard of review to be one of abuse of discretion and noted that the term "abuse of discretion" connotes more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.

{¶ 39} This court has also found that a preliminary injunction is an extraordinary remedy and, as such, the appellant has a substantial burden to meet in order to be entitled to a preliminary injunction. *Ormond v. Solon* (Oct. 18, 2001), Cuyahoga App. No. 79223, 2001 WL 1243959. The party seeking the preliminary injunction must establish a right to the preliminary injunction by showing clear and convincing evidence of each element of the claim. *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.* (1996), 109 Ohio

App.3d 786, 673 N.E.2d 182, citing *Mead Corp., Diconix, Inc. v. Lane* (1988), 54 Ohio App.3d 59, 560 N.E.2d 1319.

{¶ 40} In ruling on a motion for a preliminary injunction, the court must consider whether (1) the movant has shown a strong or substantial likelihood or probability of success on the merits, (2) the movant has shown irreparable injury, (3) the preliminary injunction could harm third parties, and (4) the public interest would be served by issuing the preliminary injunction. *Ormond,* supra, citing *Gobel v. Laing* (1967), 12 Ohio App.2d 93, 41 O.O.2d 175, 231 N.E.2d 341; *Frisch's Restaurant, Inc. v. Shoney's, Inc.* (C.A.6, 1985), 759 F.2d 1261, 1263; and *Goodall v. Crofton* (1877), 33 Ohio St. 271, 1877 WL 186.

{¶ 41} In the matter at hand there is no compelling evidence in the record that the trial court abused its discretion in denying the appellant's motion for injunctive relief. The trial court record reflects that the trial judge held a hearing on the appellant's motion for injunctive relief. However, the record on appeal is devoid of any transcript of this hearing. The Ohio Supreme Court was recently faced with just such a predicament and found that where either no transcript was made, or it has not been submitted as a part of the record to the appellate court, an appellate court must presume the regularity of the trial court's proceedings and judgment. *Natl. City Bank v. Beyer* (2000), 89 Ohio St.3d 152, 729 N.E.2d 711, citing *Wells v. Spirit Fabricating, Ltd.* (1996), 113 Ohio App.3d 282, 288–289, 680 N.E.2d 1046.

{¶ 42} The appellant's second assignment of error is overruled.

Judgment affirmed in part
and reversed in part.

FRANK D. CELEBREZZE, JR., J., concurs.

COLLEEN CONWAY COONEY, J., dissents.

COLLEEN CONWAY COONEY, Judge, dissenting.

{¶ 43} I must respectfully dissent from the majority's disposition of this appeal.

{¶ 44} I disagree with the majority's conclusion that R.C. 1753.09 applies to OPMG. R.C. 1753.09 applies only to a "health insuring corporation," which is defined in R.C. 1751.01(N) as follows:

{¶ 45} " 'Health insuring corporation' means a corporation, as defined in division (G) of this section, that, pursuant to a policy, contract, certificate, or agreement, pays for, reimburses, or provides, delivers, arranges for, or otherwise makes available, basic health care services, supplemental health care services, or

specialty health care services, or a combination of basic health care services or specialty health care services, through either an open panel plan or a closed panel plan."

{¶ 46}   OPMG, a corporation that contracts with Kaiser Permanente, an HMO, to provide services at area hospitals, simply does not fit this definition. Sinoff concedes that Kaiser is a health insuring corporation.   (Appellant's Brief at 29–30.)

{¶ 47}   The majority maintains that OPMG is an HMO, based on this court's holding in *Wall v. Ohio Permanente Med. Group, Inc.* (1997), 119 Ohio App.3d 654, 695 N.E.2d 1233.   However, nowhere in *Wall* did this court make this finding.   *Wall* found only that OPMG served as "a peer review committee 'of' an HMO," not that it is the equivalent of an HMO.   Id. at 663–664, 695 N.E.2d 1233.

{¶ 48}   Because I find that OPMG does not constitute a "health insuring corporation" under either case or statutory law, I believe that R.C. 1753.09 does not apply to Sinoff's claims.   I would, therefore, affirm the trial court's judgment.