JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Invacare Corporation ("Invacare"), appeals the trial court's decision denying its motion for preliminary injunction against plaintiffs-appellees, Julie Jacono ("Jacono"), et al. Finding no merit to the appeal, we affirm.
 {¶ 2} Invacare is an Ohio-based company that specializes in home medical products, including motorized wheelchairs. Jacono was employed at Invacare from August 1997 through July 2003. Prior to her employment with Invacare, she studied biomedical engineering at Case Western Reserve University ("CWRU"). After receiving her degree, she was hired as the director of Case Engineering Service Group. As director, she served as the liaison between students and hospitals, service agencies, and families to identify projects for senior engineering students at CWRU to assist children with disabilities. While studying for her master's degree, Jacono worked at a local hospital as a rehabilitation engineer. During her time at CWRU, Case Engineering, and the hospital, Jacono served as what is commonly referred to in the medical products industry as a "translator." A translator studies the medical needs of a given patient and the solutions required by the doctor and clinician and then translates the data into engineering terms.
 {¶ 3} In 1997, Jacono was hired by Invacare as an assistant product manager in the sales and marketing department. She was quickly promoted to product manager and assumed responsibility for many aspects of the company's research and development. Jacono assisted Invacare with developing market strategies and conforming to reimbursement requirements. She also assisted the company with the development of specialized wheelchairs and motorized wheelchair controllers. She participated in developing future projections for the company and was privy to the company's financial data, including its pricing structure. She was also instrumental in the field testing of Invacare's wheelchairs. During her last two years of employment, Jacono served as the senior project manager for the Mark V wheelchair controller and the TDX wheelchair.
 {¶ 4} During the course of her employment with Invacare, Jacono entered into a "Technical Information and Non-Competition Agreement" with the company. The agreement contained a nationwide non-competition clause, which prohibited Jacono for a period of three years from rendering "services to act as an officer, director, partner, consultant or employee of, or otherwise assist any competitor." Under the agreement, Jacono agreed to keep confidential any information relating to Invacare's business. The agreement also included a reimbursement clause that would pay her previous base salary plus benefits if she was unable to obtain employment in the field as a result of the non-compete clause.
 {¶ 5} Jacono resigned from Invacare in July 2003 and went to work for a local veterans hospital. In July 2004, she started her own consulting firm, MPM Solutions ("MPM"). In November 2004, appellee Sunrise Medical ("Sunrise") approached MPM and they entered into a consulting arrangement. Sunrise is a California- and Colorado-based company that manufactures motorized wheelchairs and competes with Invacare. Sunrise hired Jacono to assist the company and Delphi, an electronics company, in the end stages of development for a new wheelchair controller. Jacono was to assist Sunrise by working as a translator to conduct field trials with potential users of the wheelchairs. Jacono was also in charge of educating the consumer and the industry on the new controller before it was made available to the public.
 {¶ 6} In December 2004, Jacono, MPM, and Sunrise filed a complaint for declaratory judgment to have Invacare's non-competition agreement declared unenforceable. Invacare filed a counterclaim and a motion for a preliminary injunction prohibiting Jacono, MPM, and Sunrise from violating and interfering with Jacono's non-compete agreement. The trial court held a hearing on the motion. Four months later, the trial court denied Invacare's motion for injunctive relief. Invacare now appeals, raising six assignments of error, some of which will be discussed together.
 {¶ 7} In reviewing the trial court's decision to grant or deny an injunction, we note that it is a matter solely within the discretion of the trial court and we will not disturb its judgment absent an abuse of discretion. Garono v. State (1988),37 Ohio St.3d 171, 173, 524 N.E.2d 496, 498. In applying this standard of review, an appellate court must not substitute its judgment for that of the trial court. State v. Reiner (2001),93 Ohio St.3d 601, 757 N.E.2d 1143, citing Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Rather, reversal on appeal is warranted only when the trial court has exercised its discretion unreasonably, arbitrarily, or unconscionably. Id., citing State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
 {¶ 8} A preliminary injunction is an extraordinary remedy; therefore, the moving party has a substantial burden to meet in order to be entitled to the injunction. Sinoff v. OhioPermanente Med. Group, 146 Ohio App.3d 732, 2001-Ohio-4186,767 N.E.2d 1251, citing Ormond v. Solon (Oct. 18, 2001), Cuyahoga App. No. 79223. The moving party must establish a right to the preliminary injunction by showing clear and convincing evidence of each element of the claim. Id., citing Vanguard Transp. Sys.,Inc. v. Edwards Transfer Storage Co., Gen. Commodities Div.
(1996), 109 Ohio App.3d 786, 673 N.E.2d 182.
 {¶ 9} In deciding whether to grant a preliminary injunction, a trial court must consider whether (1) there is a substantial likelihood that the movant will prevail on the merits, (2) the movant will suffer irreparable injury if the injunction is not granted, (3) third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by granting the injunction. Swagelok Co. v. Young, Cuyahoga App. No. 78976, 2002-Ohio-3416, citing Vanguard Transp. Sys.,Inc. v. Edwards Transfer Storage Co. (1996),109 Ohio App.3d 786, 673 N.E.2d 182. No one factor is dispositive. Cleveland v.Cleveland Elec. Illum. Co. (1996), 115 Ohio App.3d 1, 14,684 N.E.2d 343.
 {¶ 10} We first note that Invacare's brief fails to comply with local appellate rules. App.R. 12(A)(2) provides:
"The court may disregard an assignment of error presented forreview if the party raising it fails to identify in the recordthe error on which the assignment of error is based or fails toargue the assignment separately in the brief, as required byApp.R. 16(A)."
 {¶ 11} Further, if an argument exists that can support the assignment of error, it is not this court's duty to root it out.Citta-Pietrolungo v. Pietrolungo, Cuyahoga App. No. 85536,2005-Ohio-4814, citing Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028. Invacare's brief is not divided into separate arguments under the assignments of error nor is every assignment supported by law, as required by the rules. We are able to glean from the brief, however, the assignments of error and will address them accordingly.
 Motion for Preliminary Injunction {¶ 12} In its first assignment of error, Invacare argues that the trial court erred when it denied the motion for preliminary injunction. We find no abuse of discretion in the trial court's finding that Jacono did not possess trade secrets or confidential information. Invacare bases its argument on the premise that the court erred in its factual findings, and therefore, the court abused its discretion. However, a mere error in judgment or law is not an abuse of discretion. State v. Powell (1990),49 Ohio St.3d 255, 552 N.E.2d 191. So long as the trial court can provide competent credible reasons for its decision, this court will not overturn its judgment. See Ross v. Ross (1980),64 Ohio St.2d 203, 414 N.E.2d 426. It is not within our province to do a de novo review of the record. We cannot substitute our judgment for that of the trial court, and we do not find that the trial court acted unreasonably, arbitrarily, or unconscionably in denying the preliminary injunction.
 {¶ 13} For the foregoing reasons, the trial court did not abuse its discretion in overruling the motion. The first assignment of error is overruled.
 Trade Secrets and the Non-competition Agreement {¶ 14} Invacare's second assignment of error states that "the trial court erred to the prejudice of defendant Invacare when it held that defendant Invacare did not have a substantial likelihood of success on the merits." In the sixth assignment of error, Invacare argues that the trial court erred when it determined that Jacono did not possess confidential information.
 {¶ 15} The trial court determined that Invacare would not succeed on the merits for two main reasons: 1) Jacono no longer possessed confidential information or trade secrets and 2) the non-competition agreement was overly broad. Therefore, we will address the second and sixth assignments of error together.
 {¶ 16} Confidential information is not defined under Ohio statutory law. "Confidential" can mean "known only to a limited few; not publicly disseminated." Procter Gamble Co. v.Stoneham (2000), 140 Ohio App.3d 260, 747 N.E.2d 268 (citing Webster's Third New International Dictionary, Unabridged (1981), 476). "Confidential information" in Jacono's agreement was defined as:
"inventions and also information not generally known relatingto employer's products, manufacturing procedures, methods,equipment, compositions, technology, formulas, trade secrets,know-how, research and development programs, sales methods, costsof production and overhead, customer lists, customer usages andrequirements and other confidential technical or businessinformation and data."
 {¶ 17} Trade secrets, on the other hand, are defined in R.C.1333.61(D), which provides:
"`Trade secret' means information, including the whole or anyportion or phase of any scientific or technical information,design, process, procedure, formula, pattern, compilation,program, device, method, technique, or improvement, or anybusiness information or plans, financial information, or listingof names, addresses, or telephone numbers, that satisfies both ofthe following:
 It derives independent economic value, actual or potential,from not being generally known to, and not being readilyascertainable by proper means by, other persons who can obtaineconomic value from its disclosure or use.
 It is the subject of efforts that are reasonable under thecircumstances to maintain its secrecy."
 {¶ 18} In determining the existence of a trade secret, the trial court must consider (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information withheld from competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate. Procter Gamble, supra, citing Pyromatics, Inc. v.Petruziello (1983), 7 Ohio App.3d 131, 134-135, 454 N.E.2d 588,592.
 {¶ 19} The court must balance "* * * the conflicting rights of an employer to enjoy the use of secret processes and devices which were developed through his own initiative and investment and the right of employees to earn a livelihood by utilizing their personal skill, knowledge and experience." ValcoCincinnati, Inc. v. N D Machining Service, Inc. (1986),24 Ohio St.3d 41, 492 N.E.2d 814, citing GTI Corp. v. Calhoon
(S.D. Ohio 1969), 309 F. Supp. 762, 768. These two interests may be balanced by distinguishing between knowledge and skill that is general in the trade and secret knowledge acquired particularly from the employer. Id.
 {¶ 20} If a court imposes an injunction based on trade secrets, that injunction is not necessarily permanent. Once a trade secret is no longer secret, any injunction imposed should be terminated. R.C. 1333.62. An injunction "should generally terminate when a former trade secret becomes either known to good faith competitors, or is obtained by them because of the lawful availability of products that can be reverse engineered to reveal such trade secrets, subject to any additional period of restraint necessary to negate lead time acquired by the misappropriator."Valco, supra at 48. It follows logically then that no injunction should be imposed if the trade secret is no longer secret at the time the moving party seeks the injunction.
 {¶ 21} In the instant case, the trial court found that the knowledge and information Jacono obtained while working at Invacare was public, outdated, or obsolete at the time Invacare sought the injunction. Therefore, Jacono no longer possessed Invacare's trade secrets or confidential information.
 {¶ 22} During her final two years at Invacare, Jacono was responsible for the TDX wheelchair and the Mark V controller. The Mark V controller was similar to the Mark IV controller, which was released to the public before Jacono began working on the Mark V. Any features on the Mark V that were different from the Mark IV were known within the industry once the Mark V was released.
 {¶ 23} It is common within the industry for competitors to buy the newly released product and disassemble it to determine the product's design features and technical specifications. This process is known as reverse engineering, a method by which competitors start with the known product and work backward to find the method by which it was developed. Through reverse engineering, the competitor can acquire product information by fair and honest means. Once a product is released, the design, components, and technology are no longer secret. See Valco,
supra at 45. Therefore, any trade secrets that Jacono may have been privy to were no longer secret once the product was released and subject to reverse engineering.
 {¶ 24} Invacare alleges that Jacono had inside information on the Mark VI wheelchair controller, which was not set to launch until after Jacono went to work for Sunrise. However, Invacare has failed to identify what special features on the Mark VI Jacono knew about that were different from earlier models and therefore secret.
 {¶ 25} Invacare also argues that Jacono learned confidential information through her participation in the development of the company's three-year plan. However, the three-year plan ended in December 2004, only a month after Sunrise approached Jacono. Any of the products, including the TDX wheelchair, that Jacono worked on at Invacare had already been launched. Invacare did not produce sufficient evidence that Jacono possessed any information about products that were not yet launched or that Invacare planned to release in the future.
 {¶ 26} The trial court also found that Invacare failed to show that Jacono possessed any confidential information with respect to sales, pricing, costs, and marketing data. Jacono would not be able to remember specific financial information that she had reviewed two years prior to her employment with Sunrise and Invacare was unable to show that Jacono had any confidential documents in her possession.
 {¶ 27} Additionally, any confidential data regarding Invacare's projected sales and costs became obsolete once the actual sales figures were obtained. Moreover, Invacare's pricing structure and manufacturing costs changed significantly after Jacono left the company, due to outsourcing and new guidelines for reimbursement. Any information she might have known would have been outdated at the time of the injunction hearing.
 {¶ 28} Invacare alleges that Jacono possessed information regarding the terminology, data configurations, and devices used in its marketing plans that were unique to the company. However, Invacare was unable to show that the information is not used by or available to other companies.
 {¶ 29} Sunrise hired Jacono to be a translator and assist with a motorized wheelchair controller that the company was developing. Jacono's responsibilities consisted of performing field tests with disabled people, collecting the results, and translating them for company engineers. Jacono was to develop training materials for the controller. Her skills as a translator were developed during her studies and employment prior to joining Invacare, and the consulting arrangement drew exclusively on her educational background. We agree with the trial court that Invacare failed to show by clear and convincing evidence that Jacono performed her duties for Sunrise using skills gained solely while working at Invacare. Moreover, the evidence showed that the design and core functions of the controller, and the hardware and software for the controller, were already developed by Sunrise and Delphi prior to Jacono's employment.
 {¶ 30} The second factor the trial court considered in deciding that Invacare would not succeed on the merits is the enforceability of the non-competition agreement.
 {¶ 31} An agreement not to compete is enforceable only to the extent it (1) is necessary to protect the company's legitimate interest; (2) does not impose undue hardship on the employee; and (3) is not adverse to public interest. Rogers v. Runfola Associates, Inc. (1991), 57 Ohio St.3d 5, 565 N.E.2d 540.
 {¶ 32} The trial court may consider the following factors in making its determination:
" * * * geographic and temporal limits, if any; whether theemployee represents the sole customer contact; whether theemployee possesses confidential information or trade secrets;whether the clause seeks to restrain ordinary, rather thanunfair, competition; whether the clause stifles the pre-existingskills of the employee or only those skills which were developedwhile working for the employer; the balance of the clause'sdetriment to employer and employee; whether the clause restrictsthe employee's sole means of support; and whether the restrictedemployment is merely incidental to the main employment."
 Raimonde v. Van Vlerah (1975), 42 Ohio St.2d 21, 25,325 N.E.2d 544.
 {¶ 33} The trial court found that Invacare did not possess a compelling business interest that justified a nationwide three-year restrictive covenant against Jacono. The court supported its conclusion again based on its finding that Jacono did not possess current confidential or trade secret information. The court also factored in the lack of geographical limit and reasoned that the non-competition agreement was overbroad because it restricted Jacono from working for any competitor, anywhere in the United States. The court also found that the agreement prohibited Jacono from seeking employment at a higher wage. Further, in the rapidly developing and advancing industry, a three-year agreement not to compete with Invacare would "diminish her stock as an attractive prospect in this industry."
 {¶ 34} While this court acknowledges that Jacono agreed to the non-compete covenant, we find no abuse of discretion in the trial court's conclusion that the undue burden on Jacono outweighs the interest in having the agreement enforced. Invacare was unable to point to any solid evidence why the agreement should be enforced. The three-year clause is too long for a rapidly changing industry, and we are concerned with the lack of a geographical restraint. We agree with the trial court that Jacono no longer possessed confidential information or trade secrets. Further, the clause would stifle the pre-existing translator skills that Jacono possessed.
 {¶ 35} We note, however, that the clause had a provision that allowed Jacono to receive her base salary if she was unable to find work due to the non-compete agreement. While generous, this clause in and of itself does not make the agreement enforceable.
 {¶ 36} Therefore, the second and sixth assignments of error are overruled.
 Irreparable Harm {¶ 37} In its third assignment of error, Invacare argues that the trial court erred in finding that the company failed to prove by clear and convincing evidence that it would suffer irreparable harm unless injunctive relief was granted. The trial court found that Invacare's arguments regarding irreparable harm were "entirely speculative and doubtful." The trial court again based its reasoning on the finding that Jacono did not possess current confidential information or trade secrets.
 {¶ 38} Under Ohio law, even the threat of harm is sufficient basis on which a court may grant injunctive relief. Procter Gamble, supra at 274. Courts have found that an actual threat of harm exists when the employee possesses knowledge of the employer's trade secrets and begins working in a position that causes her to compete directly with the former employer or the product line that the employee formerly supported. Id. This is similar to the inevitable-disclosure rule, which reasons that a threat of harm warranting injunctive relief can be shown by facts establishing that an employee with detailed and comprehensive knowledge of the former employer's trade secrets and confidential information now works for a competitor of the former employer in a position that is substantially similar to the position held during the former employment. Id. However, any harm or threat of harm is not irreparable if money damages can serve as an adequate remedy. See Fraternal Order of Police v. Cleveland (2001),141 Ohio App.3d 63, 749 N.E.2d 840; Crestmont Cadillac Corp. v.GMC, Cuyahoga App. No. 83000, 2004-Ohio-488.
 {¶ 39} Invacare argues that the threat of harm exists because Sunrise would use Jacono's knowledge of Invacare's confidential information and trade secrets to skip steps in the design and manufacturing process of new motorized wheelchair controllers. This information, Invacare argues, would give Sunrise an unfair advantage because Sunrise could exploit any weaknesses found in Invacare's wheelchairs and learn what special features Invacare chose to put in or leave out of its designs.
 {¶ 40} Invacare argues that the evidence of the threat of harm is shown by the marketing plan Jacono developed for the launch of Sunrise's newest controller. The plan, Invacare alleges, contains similar language to the product specification for the Mark V controller. The trial court found that this single piece of evidence was insufficient to prove under a clear and convincing standard that Invacare would suffer irreparable harm if the injunction was denied. We agree.
 {¶ 41} Jacono did not begin working for Sunrise immediately after leaving Invacare. The products she worked on while employed with Invacare were released to the marketplace before Sunrise hired her. Invacare cannot prove by clear and convincing evidence that she possessed current confidential information. Invacare argues that they have already been harmed, but is unable to support that contention. Any harm caused to Invacare would be based on fair competition in the marketplace. Therefore, we find no abuse of discretion in the trial court's conclusion that Invacare is not facing irreparable harm. The third assignment of error is overruled.
 Injunctive Relief and the Public Interest {¶ 42} In the fourth assignment of error, Invacare argues that the trial court erred when it held that the company failed to prove that the threatened injury of granting injunctive relief outweighed the threat of harm to others. In its fifth assignment of error, Invacare argues that the trial court erred when it found that the preliminary injunction would not serve the public interest.
 {¶ 43} Invacare argues that the harm to the company would be great and the public interest would be served by granting the injunction because the injunction would preserve the sanctity of contractual relations and prevent unfair competition. Jacono argues that the inability to work in her chosen field would cause her economic damages and the physically-challenged community would be harmed because she would be prohibited from assisting them.
 {¶ 44} The trial court found that Jacono is at greater risk to suffer harm than Invacare. The injunction could prevent Jacono from obtaining a higher standard of living and diminish her chances of future employment in her chosen field. The trial court also found that Jacono's employment with Sunrise was in the public's best interest because she is a skilled translator. Further, "the disabled community will [benefit] if Ms. Jacono is allowed to implement her skills through her job with Sunrise."
 {¶ 45} We find that both Jacono and the consumer would suffer harm if the injunction is granted and that the injunction is not in the public's best interest. That harm outweighs any potential harm to Invacare. The power wheelchair industry is rapidly changing and advancing. A three-year hiatus from the industry would not only diminish Jacono's employment opportunities in her field, but would stifle her ability to advance her knowledge of highly specialized products. The record shows that Jacono is a trained and competent translator who has dedicated both her studies and professional career to perfecting devices that assist individuals confined to wheelchairs.
 {¶ 46} Finding no abuse of discretion, we overrule the fourth and fifth assignments of error.
 {¶ 47} Accordingly, judgment is affirmed.
It is ordered that appellees recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J. and McMonagle, J. concur.