PATRICIA ANN BLACKMON, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 {¶ 50} While I agree with the majority's opinion that the trial court properly granted Clifton's motion for preliminary injunction, I would respectfully find that the majority's conclusion regarding the interpretation of the Termination Provision, and thus the scope of the noncompete clause, is unreasonable. Consequently, I respectfully dissent.
 

 {¶ 51} To determine whether the trial court's interpretation of the Termination Provision is reasonable, we turn to the scope of the noncompete clause. In granting the preliminary injunction, the court did not consider any factors specific to a noncompete clause, which "is enforceable only to the extent it (1) is necessary to protect the company's legitimate interest; (2) does not impose undue hardship on the employee; and (3) is not adverse to public interest."
 
 Jacono v. Invacare Corp
 
 ., 8th Dist. Cuyahoga No. 86605,
 
 2006-Ohio-1596
 
 ,
 
 2006 WL 832451
 
 , ¶ 31. In determining whether restrictions imposed by a noncompete clause are reasonable, courts should consider the following factors:
 

 the absence or presence of limitations as to time and space * * *[;] [w]hether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.
 

 Extine v. Williamson Midwest, Inc.
 
 ,
 
 176 Ohio St. 403
 
 , 406,
 
 200 N.E.2d 297
 
 (1964),
 
 overruled in part on other grounds,
 

 Raimonde v. Van Vlerah
 
 ,
 
 42 Ohio St.2d 21
 
 ,
 
 325 N.E.2d 544
 
 (1975).
 

 {¶ 52} According to the record, there is evidence of the following.
 

 {¶ 53} First, the Termination Provision is limited to 12 months, and it appears to be unlimited geographically within the United States. Second, Trinity was the sole or exclusive contact with Clifton's customers. Third, testimony in the record shows that Clifton's parts were "standardized" products that did not involve confidential information or trade secrets. Fourth, the court's interpretation seeks to eliminate all competition in the railroad wear parts industry. Fifth, it is unclear from the record whether the Termination Provision "seeks to stifle" Trinity's skills, although it appears that Trinity sold products other than railroad wear parts. There is no evidence in the record as to what extent the remaining four factors apply to the case at hand. Although the numbers in the record were admittedly not accurate or complete, Thomas testified that Clifton lost at least $500,000 in sales after Trinity terminated the Agreement. Whether these lost sales can be attributed to Trinity's actions and the exact amount of damages, if any, are facts to be determined at a future time.
 

 {¶ 54} I would find that the trial court's interpretation of the Termination Provision's restrictions is more encompassing
 than reasonably necessary to protect Clifton. Furthermore, in my opinion, the restrictions impose an undue hardship on Trinity who, under the injunction as granted, is prohibited from selling parts that Clifton has not manufactured in recent history to companies with which Clifton has never done business.
 
 See
 

 Mid-West Presort Mailing Servs., Inc. v. Clark
 
 , 9th Dist. Summit No. 13215,
 
 1988 WL 17825
 
 (Feb. 10, 1988) ("Employers should not receive insulation from all competition * * *; rather, they should only receive protection from unfair competition"). In other words, I would find that an umbrella prohibition on all competition within the railroad wear parts industry (i.e., incorporating Exhibits A and B) is unreasonable. Rather, I would narrow the scope of the noncompete clause to prohibit Trinity from selling, for a 12-month period, any product it previously sold for Clifton to any customer to whom it previously sold to on behalf of Clifton during the term of the Agreement.