OPINION
{¶ 1} Appellants, Douglas G. Dray and Mary Dray (collectively referred to as "Dray"), are the owners of a single family residence at 753 Howland Wilson Road, Howland Township, Trumbull County, Ohio. Dray started construction of a detached garage toward the end of the summer in 2004. The garage height and area exceeded the permissible limits as prescribed in the Howland Township zoning resolutions. Appellees, the Board of Township Trustees of Howland Township and Darlene M. St. George, the township administrator (collectively referred to as "Howland Township"), caused a "stop work" order to issue. When work continued, they filed an injunction action, pursuant to R.C.519.24, in the common pleas court of Trumbull County to enjoin construction of the detached garage. For the reasons indicated below, we reverse the judgment entry of the trial court which orders Dray to conform to the Howland Township zoning resolution.
 {¶ 2} Dray first applied for a building permit on April 13, 2003. At that time, he submitted plans drawn up by a professional designer to the Howland Township assistant zoning inspector. The plans show a design for the first floor of the garage and a second floor. The area of the first floor is 896 square feet. The area of the second floor is 469 square feet, for a total square footage of 1,365 square feet. Dray later changed the area of the first floor to 840 square feet. Dray intended to use the second floor for storage, and did not count its area in the aggregate square footage. The township limit is 900 square feet, or fifty percent of the living space of the main house, whichever is greater. Dray believed he was in compliance with the area requirement.
 {¶ 3} The plans also show the height of the building to be twenty-one feet, three inches. The height limitation of the Howland Township zoning resolution is eighteen feet. Dray's application for a building permit stated that the height of the garage would be fifteen feet. The second story was not counted in Dray's application with reference to the height limitation.
 {¶ 4} In April 2003, the assistant zoning inspector filled out an application for a zoning certificate. The application stated that the height of the building would be fifteen feet and that there would be no second story. There was conflicting testimony as to why the information on the application differs from the plans. However, on the basis of the information in the application, the assistant zoning inspector issued a permit to Dray that day. Because construction did not commence within ninety days, the permit expired.
 {¶ 5} Dray again applied to the building official on July 22, 2004. He again submitted the plans he had previously submitted in 2003. This time, the assistant zoning inspector took no note of the plans and simply reissued the zoning certificate for the detached garage.
 {¶ 6} When the garage was nearly completed, Dray was visited on at least three occasions by the zoning inspector of Howland Township. On the third visit, she issued a "stop work order" to him for the purpose of halting construction of the garage. Based upon her interpretation of the height and area requirements of the zoning resolution, she believed that it was too tall and too large to conform to the zoning resolution. She also advised him that he could apply with the township board of zoning appeals for a variance. Dray chose not to apply for a variance because he believed that his plans were in compliance with the zoning resolution.
 {¶ 7} The township administrator was then authorized by the township trustees to file an injunction action, pursuant to R.C.519.24, to obtain a court order which would make Dray come into compliance with the Howland Township zoning resolution.
 {¶ 8} R.C. 519.24 reads, in pertinent part:
 {¶ 9} "In case any building is or is proposed to be located, erected, constructed, reconstructed, enlarged, changed, maintained, or used or any land is proposed to be used in violation of sections 519.01 to 519.99, inclusive, of the Revised Code, or of any regulation or provision adopted by any board of township trustees under such sections, such board * * * [or] the township zoning inspector * * * in addition to other remedies provided by law, may institute injunction * * * action or proceeding to prevent, enjoin, abate, or remove such unlawful location, erection, construction, reconstruction, enlargement, change, maintenance, or use. * * *"
 {¶ 10} The trial court issued a temporary restraining order which directed Dray to immediately cease and desist construction work on the detached garage. The court then set the matter for hearing on Howland Township's request for preliminary injunction.
 {¶ 11} Without objection, the hearing proceeded on both the request for a preliminary injunction and the request for permanent injunction. Prior to the hearing, the trial court viewed the property in question.
 {¶ 12} At the hearing, Doug Turner, who was Dray's professional residential designer, attempted to justify the area and height specifications. With reference to the area limitation, he testified that the Ohio Building Code calculates the square footage as if one were looking at the building from an airplane. Thus, a building with dimensions of thirty feet by thirty feet would be nine hundred square feet in total; and, even though his plan showed a total of 1,365 square feet, for township zoning purposes, the "airplane" calculation is the one which is applicable.
 {¶ 13} With reference to the height limitation, Turner testified that, although the plan showed a height of twenty-one feet three inches, the measurement should be made with reference to the average height based on finished grade. In Dray's case, the slope of the property is such that the "grade" varies from a low point of fourteen feet nine inches, to a high point of twenty-one feet three inches, the average being eighteen feet. Thus, if the building were located at a grade level of fourteen feet three inches, the building he designed could be three feet three inches below the average finished grade of eighteen feet, and it would still be within the eighteen feet requirement. Turner stated that the property owner could manipulate the average finished grade by backfilling next to the building until the grade was in compliance with the height requirement.
 {¶ 14} The trial court did not accept the arguments of Dray and his professional designer. It cited to the Howland Township zoning provisions. Section 5:E (1) of the zoning resolution says, with reference to height, that "no detached garage shall exceed eighteen (18) feet in height from grade level;" and with reference to area, Section 5:C (1) provides that "such structure shall not exceed 900 square feet in area * * *." The court observed that the proposed backfilling by Dray would not be welcomed by his neighbors in that it would create an unwanted terraced effect. The court also found that "grade" is "the general elevation of the properties and structures in the area in question." It did not accept that "grade" could be established at any given point around the building in question.
 {¶ 15} With reference to the area limitation, the trial court found that "usable square footage" is the appropriate way to measure the square footage of a building. In a dwelling, one measures the second story or the third story to compute square footage. Likewise, in this case, Dray's second story in his detached garage will be usable square footage, and therefore, it has to be included in the area computation.
 {¶ 16} The trial court's findings were memorialized in a judgment entry which was filed on October 29, 2004. At the conclusion of the judgment entry, the court stated,
 {¶ 17} "Based on the preceding comments, this Court finds [Dray] to be in violation of the Zoning Resolution of Howland Township. [Dray is] therefore ordered to bring the structure into compliance by reducing the height from floor level which this court determines to be `grade' to a maximum height of 18 feet and to comply with the maximum square footage of 900 square feet.
 {¶ 18} "[Dray is] afforded an opportunity to seek a variance before this Court will enforce any request by the Township for enforcement of this order, but said time shall not exceed a reasonable time if a variance is to be sought by [Dray]. * * * There is no just cause for delay of appeal of this matter."
 {¶ 19} Dray filed an appeal to this court from the judgment entry of October 29, 2004. The matter was remanded to the trial court because the quoted portions of the trial court's judgment entry left open the possibility of enforcement thereof until a period of "reasonable time" had transpired within which Dray could seek a variance from the height and area limitations.
 {¶ 20} On remand, the trial court entered another judgment entry. In it, the trial court found that Dray had sought a variance, but that it was denied. The trial court's latter judgment entry, dated June 30, 2005, held:
 {¶ 21} "The previous order of this Court is therefore re-filed in its entirety without the language permitting [Dray] an opportunity to further avoid the decision of this Court.
 {¶ 22} "[Dray is] therefore found to be in violation of the Howland Township zoning ordinance; and Howland Township is authorized to proceed in any manner available at law to bring [Dray] into compliance.
 {¶ 23} "There is no just cause for delay in appeal of this matter."
 {¶ 24} On August 29, 2005, this court stated, "[i]t is clear that there now exists a final appealable order in this case."
 {¶ 25} Dray has assigned two assignments of error. These assignments of error advance the same basic argument in each, and shall be treated together:
 {¶ 26} "The Trial Court Erred in It's [October 29, 2004] Judgment Entry By Not Finding The Howland Township Zoning Resolution Definition of Height Ambiguous And Construed In Favor Of The Property Owners;" and
 {¶ 27} "The Trial Court Erred In It's [October 29, 2004] Judgment Entry By Not Finding the Howland Township Zoning Resolution Definition of Area Ambiguous and Construed in Favor of the Property Owners."
 {¶ 28} Preliminarily, we note that though the trial court did not affirmatively state that it was granting a permanent injunction in favor of Howland Township, the nature of its order was such that the trial court left no doubt that Dray was to bring his detached garage into compliance with the Howland Township zoning resolution. The trial court had made clear in its October 29, 2004 judgment entry what it meant by compliance. Otherwise, the officials of Howland Township were "authorized to proceed in any manner available at law to bring [Dray] into compliance."
 {¶ 29} We review this assignment of error employing an abuse of discretion standard. Danis Clarkco Landfill Co. v. Clark Cty.Solid Waste Mgt. Dist. (1995), 73 Ohio St.3d 590, paragraph three of the syllabus. As stated by the Eighth Appellate District, "[t]he issue whether to grant or deny an injunction is a matter solely within the discretion of the trial court and a reviewing court will not disturb the judgment of the trial court in the absence of a clear abuse of discretion." (Citation omitted.) Sinoff v. Ohio Permanente Med. Group, Inc. (2001),146 Ohio App.3d 732, 740.
 {¶ 30} We start with the proposition that the ability of township trustees to regulate zoning is in the nature of a police power and is derived from legislative enactments:
 {¶ 31} "The zoning power of township trustees is rooted in Chapter 519 of the Ohio Revised Code. See R.C. 519.02. This authority is solely in the nature of a police power delegated to the township trustees by the Ohio General Assembly." Warner v.Jerusalem Twp. Bd. of Zoning Appeals (Mar. 17, 1989), 6th Dist. No. L-88-353, 1989 Ohio App. LEXIS 836, at *5. See, also,Ketchel v. Bainbridge Twp. (1990), 52 Ohio St.3d 239;Yorkavitz v. Columbia Twp. (1957), 166 Ohio St. 349, 351.
 {¶ 32} R.C. 519.02, as it existed on July 22, 2004, provides, in pertinent part:
 {¶ 33} "For the purpose of promoting the public health, safety, and morals, the board of township trustees may in accordance with a comprehensive plan regulate by resolution the location, height, bulk, number of stories, and size of buildings and other structures * * * the uses of buildings and other structures * * * in the unincorporated territory of such township[.]"
 {¶ 34} Thus, Howland Township has the statutory authority to regulate height and area of buildings within the township in the interest of "public health, safety, and morals." The current version of R.C. 519.02 has eliminated the word "morals." Such authority must not be exercised arbitrarily, unreasonably, or capriciously. As stated by the Eighth Appellate District:
 {¶ 35} "It is well established in the law of zoning that an exercise of zoning power is arbitrary, unreasonable and capricious when it bears no rational relationship to the purpose of zoning. * * * The burden rests upon a petitioner to prove that the zoning ordinance has no substantial relation to the health, safety, and morals of the community." (Internal citations omitted.) Young v. Bd. of Zoning Appeals (July 27, 1978), 8th Dist. No. 37211, 1978 Ohio App. LEXIS 10120, at *10.
 {¶ 36} Thus, Dray has the burden to prove that the exercise of authority by the board of trustees of Howland Township, as it applies to his garage project, is arbitrary, unreasonable, and capricious. Dray is not challenging the validity of the Howland Township resolution. Instead, he is challenging the interpretation and enforcement of the resolution by the building officials so as to deprive him of his ability to construct his garage. His challenge is that incorrect building standards are being applied to his project.
 {¶ 37} Dray argues that the definitions pertaining to height of buildings and area of buildings should be controlled by the Ohio Basic Building Code rather than the Howland Township zoning resolution provisions, quoted above. Ohio Adm. Code 4101: 1-2-02, Section 502.1. The argument is based upon a seeming ambiguity in the terms "height," "grade level," and "area," which are found in the zoning resolution, but are not defined therein. Dray posits that the Ohio Basic Building Code is incorporated by reference into the Howland Township zoning resolution, and that the following definitions of those terms from the Ohio Basic Building Code are very specific and should control in this case:
 {¶ 38} "Height, Building. The vertical distance from grade plane to the average height of the highest roof surface. * * *
 {¶ 39} "Area, Building. The area included within surrounding exterior walls (or exterior walls and fire walls) exclusive of vent shafts and courts. * * *
 {¶ 40} "Grade Plane. A reference plane representing the average of finished ground level adjoining the building at exterior walls. Where the finished ground level slopes away from the exterior walls, the reference plane shall be established by the lowest points within the area between the building and the lot line or, where the lot line is more than 6 feet (1829 mm) from the building, between the building and a point 6 feet (1829 mm) from the building." (Emphasis sic.). Id.
 {¶ 41} We recognize that the Ohio Basic Building Code is not intended to supplant township zoning resolutions because "the state does not have a statewide zoning scheme." Canton v. Ohio,95 Ohio St.3d 149, 2002-Ohio-2005, at ¶ 24. As Howland Township has argued, its zoning resolution is a local law with a local purpose, to control growth and development within its borders. The provisions of the Ohio Basic Building Code, including the definitions pertaining to "height," "area," and "grade," have a very different purpose. The statutory provision enabling the promulgation of the Ohio Basic Building Code provides, in pertinent part:
 {¶ 42} "The board of building standards shall:
 {¶ 43} "(A) Formulate and adopt rules governing the erection, construction, repair, alteration, and maintenance of all buildings or classes of buildings specified in section 3781.06 of the Revised Code * * * The standards shall relate to the conservation of energy in and to the safety and sanitation of such buildings." R.C. 3781.10(A).
 {¶ 44} Thus, the purpose of the Ohio Basic Building Code is to control the construction of buildings, and to ensure their safety and sanitation. This purpose is not in conflict and differs significantly from a township zoning resolution.
 {¶ 45} Howland Township concedes that the terms "height," "area," and "grade level," as used in the township's zoning resolution, are at odds with the definitions in the Ohio Basis Building Code, but does not concede that an ambiguity exists in the zoning resolution provisions. Instead, it argues:
 {¶ 46} "Height in terms of zoning is determined by common usage and common sense application. The building code applies to construction of buildings and not to the interpretation of zoning laws and regulations. The purpose of height in a zoning context is different from the purpose of height in a construction context."
 {¶ 47} With respect to whether an ambiguity exists in the Howland Township zoning resolution, an ambiguity exists only where an argument can be made that a term or provision is subject to different interpretations:
 {¶ 48} "An ordinance is ambiguous when it is subject to various interpretations; that is, an ordinance is ambiguous if a reasonable person can find different meanings in the ordinance and if rational arguments can be made for either meaning."Taylor v. Circleville, 4th Dist. No. 03CA8, 2003-Ohio-7166, at ¶ 12.
 {¶ 49} However, words are to be given "the meaning commonly attributed to them unless a contrary intention appears in the regulation." Id. As stated by the court in the case of Griffithv. Rielage, (2004), 127 Ohio Misc.2d 122, 131:
 {¶ 50} "Thus, `to be enforceable, legislation need not be drafted with scientific precision.' State v. Anderson (1991),57 Ohio St.3d 168, 174. * * * Indeed, `"few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions."'" Id. at 132, quoting Boyce Lines, Inc. v.United States (1952), 342 U.S. 337, 340.
 {¶ 51} The Howland Township zoning resolution contains the terms "height," "area," and "grade," but does not define them. A reasonable person could argue that the terms connote different meanings, depending on the context, and that rational arguments can be made for different meanings. This is one ambiguity. Another ambiguity is created by the fact that the zoning resolution incorporates by reference the Ohio Basic Building Code, but that code, by its own terms, is not applicable to single family residences or their detached garages. R.C.3781.06(A)(1). That is, the Ohio Basic Building Code was promulgated by the Ohio Board of Building Standards to govern construction of modular "industrialized units." It has "no force and effect when applied to single-family, two-family, and three-family dwelling houses, and accessory structures incidental to those dwelling houses." Id. Howland Township created an ambiguity by incorporating the Ohio Basic Building Code into its zoning resolution, and thereby incorporated construction standards into its zoning resolution which would not otherwise be there. Thus, Dray has a reasonable argument that the definitions in the Ohio Basic Building Code are applicable to the height and area limitations of the Howland Township zoning resolution, and that the terms are therefore ambiguous. The trial court's interpretation otherwise was an abuse of discretion.
 {¶ 52} A further ambiguity is found in the power of the board of trustees to regulate the dimensions of buildings "in accordance with a comprehensive plan." However, the record contains no reference to the existence of a "comprehensive plan." The trial court stated in its judgment entry, "[t]he underlying basis for zoning is to, when need be, enforce conformity to a general plan," but this "general plan," referred to by the trial court, is intangible and does not have the substance called for in a "comprehensive plan." The trial court was correct in stating that zoning should conform to a "general plan," but the General Assembly was more specific in its grant of authority to townships to regulate zoning when it conditioned the grant of authority to be in accordance with a "comprehensive plan." A "comprehensive plan" is a specific plan which sets uniform standards in a given district or zone, as opposed to a "general plan" for the entire community, as the subsequent portion of R.C. 519.02 makes clear:
 {¶ 53} "All such regulations shall be uniform for each class or kind of building or other structure or use throughout any district or zone, but the regulations in one district or zone may differ from those in other districts or zones."
 {¶ 54} The district in which Dray's residence is located is a single-family residential district.
 {¶ 55} Moreover, the state legislature has the ability to modify or limit the powers given to townships:
 {¶ 56} "`[S]ince a township's power and authority is derived from the legislative, (sic) it is within the province of the state legislature to modify or limit the powers conferred upon townships. Thus, it is stated that:
 {¶ 57} "`"The power of a political subdivision to adopt and enforce zoning regulations is limited not only by the specific grants and restrictions of the zoning enabling acts, but by the general law of the state. A political subdivision of the state cannot enact and enforce regulations which are in conflict with the general law of the state. This principle applies * * * to townships and counties which derive zoning power from the enabling acts * * *."'" (Citations omitted.) Autistic Communityfor Northwest Ohio, Inc v. Bd. of Trustees of Jerusalem Twp.
(Mar. 21, 1980), 6th Dist. No. 80-008, 1980 Ohio App. LEXIS 11672, at *7-8.
 {¶ 58} The trial court in this case stated that "[t]he underlying basis for zoning is to, when need be, enforce conformity to a general plan that has been put into effect by the community through its trustees and zoning board." It interpreted "grade" to mean the "general elevation of the properties and structures in the area in question." It interpreted "height" to mean "from floor to rooftop." Finally, it interpreted "area" to mean "usable square footage." These are common sense interpretations of words in common usage. These interpretations are consonant with the purpose of the zoning resolution, however, they are not consonant with the definitions of the Ohio Basic Building Code, which has been incorporated by reference into the Howland Township zoning resolution. A conflict exists between the trial court's interpretation of the terms in the zoning resolution and the definitions promulgated by the Ohio Basic Building Code. We resolve the conflict in favor of the homeowner in this case, and determine that the trial court abused its discretion in interpreting the Howland Township zoning resolution contrary to the definitions of the Ohio Basic Building Code, which definitions are incorporated by reference. Further, the exercise of its police power by the township must be in accordance with the grant of authority from the General Assembly, which means that it must be in accordance with a "comprehensive plan," as opposed to a "general plan." Where it is not, arbitrary enforcement of the zoning resolution is inevitable. In this case, arbitrary enforcement of the zoning resolution led to an erroneous interpretation by the trial court. For these reasons, we reverse the judgment entry of the trial court.
 {¶ 59} The first and second assignments of error are with merit.
 {¶ 60} The judgment entry of the trial court is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
Diane V. Grendell, J., concurs with Concurring Opinion, William M. O'Neill, J., dissents with Dissenting Opinion.